No. 54,801

LAVERNE L. DALE, *Appellee,* v. KING LINCOLN-MERCURY, INC., *Appellant.*

(676 P.2d 744)

Opinion filed February 18, 1984.

*Everett C. Fettis,* of Fettis & McClure, of Wichita, argued the cause and was on the brief for appellant.

*David H. M. Gray,* of Gragert, Hiebert & Gray, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, King Lincoln-Mercury, Inc. (King), from a judgment entered against it in the district court of Sedgwick County for breach of implied warranty of merchantability in the sale of a used car. Plaintiff, LaVerne L. Dale, was the used car purchaser. The single issue raised by appellant is that the trial court erred in awarding judgment based upon breach of implied warranty of merchantability.

On April 7, 1981, Dale bought a 1978 Buick LeSabre Custom with 32,795 miles on it from King Lincoln-Mercury in Wichita, Kansas. Dale paid almost $5,000 for the car, which was described as a "cream puff," meaning that it was excellent and in tip-top condition. The following express warranty is handwritten on the face of the sales contract:

"30 Day or 1000 mile Warranty 100% on Drive Line & Air Conditioner."

Twenty-two days after purchase, the car's transmission failed, and the $468 repair bill was paid by King under the express warranty. About thirty days later, during a Memorial Day weekend trip to Nebraska, the car's motor failed. Dale rented a car and drove home to Wichita so that he could be at work the next week. The dealer in Lincoln, Nebraska, to whom Dale had taken the car, said he could not repair it for about a month, so Dale returned to Nebraska, rented a tow-bar and hitch, towed the car

to Marion, Kansas, and had it repaired by Webster Auto Service of that city. The engine block was replaced at a cost of $1,213.28.

There was no evidence of misuse of the vehicle by Dale. Also, it developed that there had been major repair to the car before it was acquired by King Lincoln-Mercury. The engine had been repaired five times in 1979; repairs included replacement of the engine block, the camshaft, a cylinder head, and other miscellaneous parts. King, however, was not aware of those repairs and had no knowledge of any defect in the engine when it sold the vehicle to Dale.

Appellant's primary argument is that the express warranty, written on the face of the sales contract, limits the implied warranty of merchantability. We do not agree.

This was a consumer transaction, and it is governed by the provisions of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* Under the act, a consumer is defined as an individual who acquires property for personal or family purposes. K.S.A. 50-624(*b*). A consumer transaction means a sale, for value, of property within this state to a consumer by a supplier. K.S.A. 50-624(*c*). A supplier is a dealer or seller who, in the ordinary course of business, solicits or engages in consumer transactions. K.S.A. 50-624(*i*). Dale falls within the definition of a consumer; King Lincoln-Mercury, Inc., falls within the definition of a supplier; and the sale by King, in the ordinary course of its business, was a consumer transaction.

K.S.A. 50-639, a part of the Kansas Consumer Protection Act, deals with warranties. Insofar as it is here applicable, that statute says:

"(*a*) Notwithstanding any other provisions of law, with respect to property which is the subject of or is intended to become the subject of a consumer transaction in this state, no supplier shall:

"(1) Exclude, modify or otherwise attempt to limit the implied warranties of merchantability and fitness for a particular purpose; or

"(2) exclude, modify or attempt to limit any remedy provided by law, including the measure of damages available, for a breach of implied warranty of merchantability and fitness for a particular purpose.

. . . .

"(*c*) A supplier may limit the supplier's implied warranty of merchantability and fitness for a particular purpose with respect to a defect or defects in the property only if the supplier establishes that the consumer had knowledge of the defect or defects, which became the basis of the bargain between the parties. . . .

"(*d*) Nothing in this section shall be construed to expand the implied warranty

of merchantability as defined in K.S.A. 84-2-314 to involve obligations in excess of those which are appropriate to the property.

"(e) A disclaimer or limitation in violation of this section is void. If a consumer prevails in an action based upon breach of warranty, and the supplier has violated this section, the court may, in addition to any actual damages recovered, award reasonable attorney's fees and a civil penalty under K.S.A. 50-636, and amendments thereto, or both to be paid by the supplier who caused the improper disclaimer to be written.

"(f) the making of a limited express warranty is not in itself a violation of this section."

K.S.A. 84-2-314, referred to in K.S.A. 50-639, is a part of the Kansas Uniform Commercial Code. It provides in substance that a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. For goods to be merchantable, they must be at least such as pass without objection in the trade under the contract description, and they must be fit for the ordinary purposes for which such goods are used.

The first section of the Kansas Consumer Protection Act provides:

"This act shall be construed liberally to promote the following policies:

. . . .

"(c) to protect consumers from unbargained for warranty disclaimers . . . ." K.S.A. 50-623.

In the case of *J & W Equipment, Inc. v. Weingartner*, 5 Kan. App. 2d 466, 469, 618 P.2d 862 (1980), the court observed that:

"Kansas consumer law has become increasingly protective [in the area of warranties of merchantability] and the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*, now prohibits the exclusion, modification or attempt to limit the implied warranties of merchantability and fitness."

Appellant argues that K.S.A. 50-639(f) permits the making of limited express warranties, and that when there is a limited express warranty, the implied warranty of merchantability is eliminated. In other words, appellant contends that a supplier or dealer may exclude, modify or otherwise limit the implied warranty of merchantability and fitness for a particular purpose by simply extending to the consumer a limited and narrowly drawn express warranty. We do not agree.

The statute, in clear terms, states that an implied warranty of merchantability may be limited only if the supplier establishes that the consumer had knowledge of the defect or defects. Such was not the case here; Dale had no knowledge that the car's

motor and transmission were faulty. Subsection (d) provides that the implied warranty shall not be expanded "to involve obligations in excess of those which are appropriate to the property." Again, appellant does not argue that the obligation here involved is excessive or inappropriate to the property.

In the recent case of *Stair v. Gaylord,* 232 Kan. 765, 659 P.2d 178 (1983), we faced the same argument appellant makes here. We said:

"The KCPA was enacted by the Kansas legislature in 1973 with the objectives, among other things, 'to protect consumers from suppliers who commit deceptive and unconscionable practices,' and 'to protect consumers from unbargained for warranty disclaimers.' K.S.A. 50-623(*b*) and (*c*). In order to promote these policies the KCPA is to be construed liberally. *Willman v. Ewen,* 230 Kan. 262, 267, 634 P.2d 1061 (1981).

. . . .

"The warranties given by both General Irrigation and Goodyear contain statements to the effect that the express warranties made were in lieu of all other warranties expressed or implied. Obviously both appellees were attempting to limit the implied warranties imposed by K.S.A. 84-2-314 and -315 and as such were in violation of the KCPA. The appellees rely on K.S.A. 1982 Supp. 50-639(*f*) which states: 'The making of a limited express warranty is not in itself a violation of this section.' This section, however, is not applicable to the present controversy. It merely recognizes that since an express warranty is not required to be made at all, a limited express warranty is proper. *It does not allow a supplier to use a limited express warranty to exclude implied warranties.* See Rasor, [Kansas Law of Sales Under the Uniform Commercial Code,] pp. 9-24, 9-25; Clark, 'Lemon Aid for Kansas Consumers,' 46 J.B.A.K. 143, 147 (1977)." (Emphasis supplied.) 232 Kan. at 775-776.

The limited express warranty given by the seller in this case is authorized by law, but it cannot limit the implied warranties of merchantability, and it cannot insulate the dealer from the requirement that the car it sold be fit for the ordinary purposes for which automobiles are ordinarily used. A "cream puff," a relatively low mileage General Motors full-size automobile, represented by the dealer as being in excellent condition when sold, certainly can be expected to contain a motor and transmission which will give the new purchaser more than a few days' service. Such a vehicle, with defective major components, is patently unmerchantable. The fact that the seller in this case was unaware of the true condition of the car is immaterial, for the act imposes no requirement of intent or prior knowledge on the part of a supplier. *Bell v. Kent-Brown Chevrolet Co.,* 1 Kan. App. 2d 131, 133, 561 P.2d 907 (1977).

The sale of used cars by dealers in Kansas is no longer governed by the maxim *caveat emptor*—let the buyer beware. The consumer protection act now places the responsibility upon the seller, not the purchaser, to determine the quality and condition of the goods. Still, the implied warranty of merchantability varies with the particular car. A late model, low mileage car, sold at a premium price, is expected to be in far better condition and to last longer than an old, high mileage, "rough" car that is sold for little above its scrap value. However, as noted above, there is no contention in this case that the implied warranty of merchantability had "expired."

Counsel have argued various provisions of the Uniform Commercial Code, K.S.A. 84-1-101 *et seq.*, and the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.*, but a discussion of those laws would only prolong this opinion and would not change the result.

We hold that the trial court did not err in awarding judgment to the plaintiff, LaVerne L. Dale, and against the defendant, King Lincoln-Mercury, Inc., for breach of the implied warranty of merchantability. We therefore affirm the judgment.