No. 97,062

MERLE J. "BOO" HODGES, M.D., and MELISSA R. HODGES, *Appellants/Cross-appellees*, v. JIM JOHNSON, d/b/a JOHNSON AND ASSOCIATES, *Appellee/Cross-appellant*.

(199 P.3d 1251)

Opinion filed January 30, 2009.

*Robert A. Martin*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, argued the cause, and was on the brief, and *Lawrence E. Nordling*, of the same firm, was with him on the reply brief for appellants/cross-appellees.

*Chris J. Kellogg*, of Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina, argued the cause, and *Larry G. Michel*, of the same firm, was with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

DAVIS, J.: The small claims court granted judgment against a used-car dealer for the cost of replacing a defective air conditioner in a vehicle purchased by a consumer. The used-car dealer appealed the monetary award; the district court affirmed but denied the plaintiffs' request for attorney fees. Both parties appealed. The Court of Appeals reversed the district court, concluding that the implied warranty of merchantability "warrants the operation of major components that are necessary for the vehicle to operate" and that the air conditioner is not a major component of the used vehicle. See *Hodges v. Johnson*, 39 Kan. App. 2d 220, 225, 178 P.3d 59 (2008). We reverse the Court of Appeals, affirm the district court's decision affirming the small claims court, reverse the district court's decision regarding attorney fees, and remand the case to the district court for an assessment of those fees.

FACTS

Jim Johnson owns a car dealership in Saline County that sells high-end, used vehicles. In January 2005, Johnson sold Dr. Merle Hodges and Melissa Hodges a 1995 Mercedes S320 with 135,945 miles for $17,020 (the sales price of $15,900 plus tax). Johnson had

been driving the Mercedes as his personal vehicle for roughly 2 years before the sale. Johnson testified before the district court in this case that he told the Hodgeses when they purchased the Mercedes that it was a nice car in good condition. Dr. Hodges testified that Johnson said the car "was just pretty much a perfect car" and that Johnson "loved driving it."

At the time the Hodgeses bought the Mercedes from Johnson, there was no discussion about the operation of the air conditioning, heating, or other components of the vehicle. Both Dr. Hodges and Johnson testified that they had no reason to believe that the air conditioner did not work when the Mercedes was sold to the Hodgeses.

In February 2005, about a month after he had bought the car from Johnson, Dr. Hodges noticed that the vent in the Mercedes did not circulate cool air and that the car emitted a strange smell. In March of the same year, the Hodgeses noticed that the Mercedes' air conditioning did not work and contacted the Hodgeses' mechanic, Virgil Anderson. Anderson added Freon to the air conditioner. About a month later, the air conditioner again was not working; Anderson added more Freon. The Hodgeses contacted Johnson to notify him of the air conditioning problem, and Johnson told them that some older vehicles may need a yearly boost of Freon to work properly.

In May 2005, the air conditioner failed a third time. After checking the air conditioning system for leaks, Anderson informed the Hodgeses that the Mercedes' evaporator, condenser, and compressor needed to be replaced. Anderson explained that these repairs would cost approximately $3,000 to $4,000.

At some time around May 2005, a mechanic who worked for Anderson told the Hodgeses that Johnson had requested that the mechanic put a product called Super Seal into the Mercedes' air conditioner in May 2003 (when he was using the car as his personal vehicle). The mechanic explained that the use of Super Seal complicated the current repair of the air conditioner and that the mechanic personally would not recommend Super Seal or apply it unless requested.

Johnson testified that he did not recall any problems with the Mercedes' air conditioner after the mechanics added Super Seal in May 2003, though he could not recall whether additional Freon was added during that time. Johnson further testified that the air conditioning problem in 2003 only involved the car's evaporator.

Anderson identified the condenser as the main problem with the Mercedes' air conditioner in 2005. Anderson testified during the pendency of this case that he could not determine whether the problem with the Mercedes' air conditioner existed at the time that the Hodgeses bought the car from Johnson or occurred at some time later.

The Hodgeses asked Johnson to pay to repair the air conditioning unit in the Mercedes. Johnson refused.

Shortly thereafter, the Hodgeses filed an action in small claims court against Johnson, alleging he caused them damages of $3,474—Anderson's estimate of the repair costs. The small claims court found in favor of the Hodgeses and awarded them $3,474 damages, plus $56 in costs and interest.

Johnson appealed to the district court. After holding a de novo hearing, the district court also found in favor of the Hodgeses, noting that "while [Johnson] may not have known of the failure of the air conditioning unit[,] . . . there is an implied warranty of merchantability," and Johnson "is responsible to the plaintiffs to provide a car that is merchantable." The court therefore entered a judgment in favor of the Hodgeses for $3,474, together with costs of $56 plus interest. The court found that attorney fees were not warranted because Johnson's actions did not rise "to a level of misrepresentation."

The Hodgeses appealed the denial of attorney fees to the Court of Appeals. Johnson filed a cross-appeal, arguing that the implied warranty of merchantability does not extend to air conditioning units on used vehicles. The Court of Appeals reversed in a divided opinion and held as a matter of law that the implied warranty of merchantability on a used vehicle extends only to "the operation of major components that are necessary for the vehicle to operate, such as the engine and transmission." *Hodges*, 39 Kan. App. 2d at 225. The court further held that "it is the responsibility of the buyer

to ensure that the components incidental to operation are in working condition." 39 Kan. App. 2d at 225. Because it found that a car's air conditioning unit is not a major component of its operation, the court held as a matter of law that the implied warranty of merchantability did not hold Johnson accountable for the failure of the air conditioner in this case. 39 Kan. App. 2d at 225.

Because the majority held that the implied warranty of merchantability did not apply to the Mercedes' air conditioning system as a matter of law, the majority declined to reach Johnson's other arguments that the Hodgeses bought the car at a significant discount and that the Hodgeses had failed to prove the exact amount of damages. 39 Kan. App. 2d at 225-26. Although the majority found that the district court had applied the wrong standard for determining whether attorney fees should apply, the majority concluded that the Hodgeses were not "successful parties" within the meaning of K.S.A. 61-2709(a); thus, attorney fees were not warranted. 39 Kan. App. 2d at 226-27.

Judge Leben dissented, stating that the majority applied the wrong standard for evaluating whether the implied warranty of merchantability applied in this case. According to Judge Leben, the question in this case was not whether the implied warranty of merchantability applied—a question of law—but whether the specific air conditioner in this Mercedes was covered by that warranty—a question of fact. *Hodges*, 39 Kan. App. 2d at 228 (Leben, J., dissenting). Judge Leben stated that because this case involved a question of fact, it should be reviewed for substantial competent evidence. Judge Leben further found that substantial evidence existed to support the district court's decision in this case. 39 Kan. App. 2d at 230-31 (Leben, J. dissenting).

This court granted the Hodgeses' petition for review.

IMPLIED WARRANTY OF MERCHANTABILITY

Kansas' implied warranty of merchantability is contained in K.S.A. 84-2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." K.S.A. 84-2-314(1). The statute further states that in order for goods to be

"merchantable," they must be "at least such as . . . are fit for the ordinary purposes for which such goods are used." K.S.A. 84-2-314(2)(c).

The implied warranty in K.S.A. 84-2-314 "set[s] minimum standards of merchantability." *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 454, 639 P.2d 29 (1982). Although "more may be required by the parties' agreement, course of dealing, or usage of trade," the minimum standards contained in K.S.A. 84-2-314 "assure a buyer that if the goods received do not conform at least to normal commercial expectations, the buyer will have a cause of action by which he or she can secure compensation for losses suffered." 230 Kan. at 454. This court has explained that the warranty seeks to strike a balance between "two extremes":

"Even though the seller may be careful not to make a single assertion of fact or promise about the goods, the ordinary buyer in a normal commercial transaction has a right to expect that the goods which are purchased will not turn out to be completely worthless. The purchaser cannot be expected to purchase goods offered by a merchant for sale and use and then find the goods are suitable only for the junk pile. On the other hand, a buyer who has purchased goods without obtaining an express warranty as to their quality and condition cannot reasonably expect that those goods will be the finest of all possible goods of that kind. . . . If an item is used or is secondhand, surely less can be expected in the way of quality than if the item is purchased new. [Citations omitted.]" 230 Kan. at 454.

A buyer seeking "[t]o establish a breach of the implied warranty of merchantability under 84-2-314(2)(c) . . . must prove first, the ordinary purpose of the type of goods involved, and second, the particular goods sold were not fit for that purpose." *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 467, 657 P.2d 517 (1983). In Kansas, this requirement has been interpreted to mean that "the buyer must show the goods were defective and the defect existed at the time of the sale. [Citations omitted.]" 232 Kan. at 467; see also *Dieker v. Case Corp.*, 276 Kan. 141, 162, 73 P.3d 133 (2003) ("To demonstrate a breach of the implied warranty of merchantability, plaintiff must show that the goods were defective, that the defect was present when the goods left the manufacturer's control, and that the defect caused the injury sustained by plaintiff.").

The extent of a merchant's obligation to a buyer "depends on the circumstances of the transaction." *International Petroleum Services*, 230 Kan. at 457. This flexibility is essential because

"any number of things can foul the operation of complex machinery, and in the case of used goods, not all of these problems amount to a breach of the warranty of merchantability. The buyer's knowledge that the goods are used, the extent of their prior use, and whether the goods are significantly discounted may help determine what standards of quality should apply to the transaction." 230 Kan. at 457.

In sales of used automobiles, this principle has been more specifically interpreted to mean that a "late model, low mileage car, sold at a premium price, is expected to be in far better condition and to last longer than an old, high mileage, 'rough' car that is sold for little above its scrap value." *Dale v. King Lincoln-Mercury, Inc.*, 234 Kan. 840, 844, 676 P.2d 744 (1984).

*Relevant Case Law*

The Kansas Supreme Court has considered the application of the implied warranty of merchantability to the sale of used automobiles on two separate occasions. In *Black*, the plaintiffs had purchased a 1-year-old Peugeot with slightly under 23,000 miles on it from the defendant. Shortly after the purchase, the plaintiff noticed that the Peugeot was leaking transmission fluid, that the accelerator would stick when the car was driven over 40 miles per hour, that the radio malfunctioned, and that the air conditioner leaked cold water when the car turned corners. The plaintiff made numerous attempts to have the seller fix the problem over the first 5 months that the plaintiff owned the vehicle, but the transmission problem worsened significantly during that time. The plaintiff eventually stopped driving the Peugeot after the clutch on the air conditioner fell out of the car onto the highway when the plaintiff was driving to work one morning.

The plaintiff sued to revoke his acceptance of the Peugeot from the defendant seller, arguing breach of express warranty and implied warranty of merchantability. A jury returned a verdict in favor of the plaintiff for the purchase price plus consequential damages.

On appeal, the defendant claimed that the plaintiff failed to present sufficient evidence to establish a breach of the implied warranty of merchantability. The *Black* court affirmed the district court's award, noting that a claim for breach of implied warranty may be proved by circumstantial evidence. 232 Kan. at 467. The court found that the jury "could have inferred from the evidence presented the plaintiff's reasonable expectations as to the use of the Peugeot" and "could also have found that the defect existed when the car left [the defendant's] control." 232 Kan. at 467.

About a year after the court decided *Black*, it had the opportunity to again consider a case involving the implied warranty in a used-car sale in *Dale*. The plaintiff in that case purchased a 3-year-old Buick LeSabre Custom with about 33,000 miles from the defendant car dealer. The defendant had described the car to the plaintiff as "a 'cream puff,' meaning that it was excellent and in tip top condition." 234 Kan. at 840. Less than a month after the plaintiff purchased the vehicle, the transmission failed. The defendant paid for a new transmission under the dealership's express warranty. About a month later, the engine failed. Because the time period for the express warranty had expired, the defendant refused to cover the cost of replacing the engine block. The plaintiff sued for breach of implied warranty of merchantability.

The *Dale* court affirmed the judgment for the plaintiff, stating:

"A 'cream puff,' a relatively low mileage General Motors full-size automobile, represented by the dealer as being in excellent condition when sold, certainly can be expected to contain a motor and transmission which will give the new purchaser more than a few days' service. Such a vehicle, with defective major components, is patently unmerchantable. The fact that the seller in this case was unaware of the true condition of the car is immaterial, for the act imposes no requirement of intent or prior knowledge on the part of a supplier. [Citation omitted.]" 234 Kan. at 843.

### Analysis

The comments to K.S.A. 84-2-314 make clear that this implied warranty of merchantability applies by operation of law to "all sales by merchants" and "arises from the fact of the sale." K.S.A. 84-2-314, Kansas Comment 1. Applying this standard to the facts before us, it is clear that the transaction in this case—the sale of the Mer-

cedes by Johnson to the Hodgeses—fits within the implied warranty. There is no dispute that Johnson is a merchant dealing in the sale of used vehicles or that the Mercedes is a "good" within the meaning of the statute. Thus, when Johnson sold the Mercedes to the Hodgeses, he implicitly warranted that the Mercedes would be "merchantable." See K.S.A. 84-2-314(1).

While a court's initial determination as to whether the implied warranty of merchantability applies to a particular transaction (based on the court's determination as to whether the case involves a sale of goods by a merchant) is a question of law, the subsequent determination as to whether that implied warranty has been breached is a question of fact. Compare *International Petroleum Services*, 230 Kan. at 453-56 (legal discussion as to whether the implied warranty of merchantability applies) with 230 Kan. at 457-60 (factual discussion as to whether the warranty was breached in that case). An appellate court generally reviews a district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

In evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. *In re Estate of Hjersted*, 285 Kan. 559, 571, 175 P.3d 810 (2008). A court ordinarily presumes that the district court found all facts necessary to support its judgment. *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). A claim for breach of implied warranty may be proved by circumstantial evidence. *Butterfield v. Pepsi-Cola Bottling Co.*, 210 Kan. 123, 126, 499 P.2d 539 (1972).

The Court of Appeals majority recognized that the sale of the Mercedes triggered the implied warranty but concluded as a matter of law under K.S.A. 84-2-314(2) that the vehicle's air conditioner was not covered by the warranty because the air conditioner did not affect the vehicle's merchantability. *Hodges*, 39 Kan. App.

2d at 225. To reach this conclusion, the majority employed a three-part syllogism: First, for goods to be merchantable under the statute, they must be "fit for the ordinary purposes for which such goods are used." K.S.A. 84-2-314(2)(c). Second, the majority concluded that the primary purpose for which used vehicles are used is transportation; thus only the major components of a vehicle that bear upon its ability to effectively transport people from one location to another affect the vehicle's merchantability. Finally, the majority interpreted our past cases involving the warranty of merchantability in the sale of used vehicles to suggest that the warranty may not apply "unless a major component or several components are defective, causing the vehicle to become virtually inoperable." 39 Kan. App. 2d at 225.

Applying this syllogism, the Court of Appeals majority determined that the air conditioner was not a major component of the Mercedes and thus did not impair the primary purpose for which used cars vehicles are employed:

"An air conditioner is not a major component of a car that is 10 years old with over 135,000 miles on it, and does not fall within the implied warranty of merchantability. We find no implied warranty of merchantability, considering the age of the car, the high mileage, and the fact that the Hodges provided no proof that the air conditioner did not work when they purchased the vehicle." *Hodges*, 39 Kan. App. 2d at 225.

This conclusion is not supported by the case law. Although it may be that the implied warranty of merchantability does not extend to some components of a used vehicle in a particular transaction, this is a case-by-case determination in most cases—not a question of law. The Court of Appeals correctly acknowledged that the transaction involved in this case was subject to the statutory provisions of K.S.A. 84-2-314. But the Court of Appeals erred when it attempted to determine the extent of Johnson's obligation to the Hodgeses as a matter of law.

The Court of Appeals majority's approach is similarly unsupported by the statutes. K.S.A. 84-2-314(2)(c) defines merchantable goods as goods that are "fit for the ordinary *purposes* for which such goods are used." (Emphasis added.) The Court of Appeals interpreted this provision to mean that a used vehicle must be fit

for the *primary* purpose of transportation. This interpretation is inconsistent with the plain language of K.S.A. 84-2-314(2)(c), which clearly contemplates goods that may be put to more than one use. Although there can be little doubt that the *primary* purpose of a vehicle is transportation, the Court of Appeals' opinion ignores the reality that a buyer may purchase a particular vehicle for a number of other purposes—among which may be safety, fuel economy, utility, or *comfort* in traveling to and from various destinations. See *Dale*, 234 Kan. at 843-44.

Contrary to the Court of Appeals' conclusion, the extent of a merchant's obligation under the implied warranty of merchantability depends on the circumstances of a transaction. *International Petroleum Services*, 230 Kan. at 457; *Hodges*, 39 Kan. App. 2d at 228-29 (Leben, J., dissenting). *International Petroleum Services* noted that not all problems that arise in "the operation of complex machinery" result in "a breach of the warranty of merchantability." 230 Kan. at 457. The determination as to whether the implied warranty has been breached turns on a number of factors, including "[t]he buyer's knowledge that the goods are used, the extent of their prior use, and whether the goods are significantly discounted." 230 Kan. at 457.

The broad range of used goods that may be covered by the implied warranty of merchantability underscores the wisdom of this court's previous recognition that a "late model, low mileage car, sold at a premium price, is expected to be in far better condition and to last longer than an old, high mileage, 'rough' car that is sold for little above its scrap value." *Dale*, 234 Kan. at 844. In this case, we have a 1995 Mercedes S320 with 135,945 miles selling for $17,020 in 2005. Johnson related to the buyer that it was a nice car in good condition; Dr. Hodges testified that he was told the car "was pretty much a perfect car." In short, this vehicle falls somewhere between the extremes of a "late model, low mileage car, sold at a premium price" and "an old, high mileage, 'rough' car . . . sold for little above its scrap value." 234 Kan. at 844.

The implied warranty of merchantability applies to the transaction in this case as a matter of law under K.S.A. 84-2-314. The question remaining to be resolved is not the existence of this war-

ranty, but rather the *extent of the seller's obligation* under the warranty. Because this case does not involve either extreme on the spectrum of used vehicles, the resolution of this question is not a question of law, but rather a factual determination. The attempt by the Court of Appeals to convert this question into a legal determination amounts to error, and its decision in this regard must be reversed.

After hearing the evidence in this case, the district court determined that the Hodgeses were entitled to judgment against Johnson for the sum of $3,474, together with costs of $56 and interest, and thus affirmed the award of the small claims court. The question we confront in our review of the district court's decision is whether its factual finding that Johnson breached the implied warranty of merchantability is supported by substantial competent evidence. See *International Petroleum Services*, 230 Kan. at 457-60; *Owen Lumber Co.*, 283 Kan. at 915-16.

To demonstrate a breach of the implied warranty of merchantability, a plaintiff must show that the purchased goods were defective, that the defect was present when the goods left the seller's control, and that the defect caused the injury sustained by the plaintiff. *Dieker*, 276 Kan. at 162. The circumstantial evidence in this case is sufficient to establish that the defect in the air conditioner existed at the time of sale. In 2003, 2 years before the Hodgeses purchased the vehicle, the Mercedes' air conditioner failed while Johnson was using it as his personal vehicle. Johnson insisted that his mechanic, against the mechanic's advice, use a product called Super Seal to fix the problem. The Hodgeses discovered that the air conditioner was again defective as soon as the weather became warm enough to require climate control. The use of the Super Seal, the strong odor emanating from the vehicle's ventilation system immediately after the sale, and the complete breakdown of the air conditioner when the buyer first attempted to use it all tend to establish that it was defective at the time of sale. While Johnson may not have known that the Mercedes' air conditioner was defective when he sold the vehicle to the Hodgeses, there is no requirement that a buyer establish that the seller knew of a defective

component at the time of sale to trigger the implied warranty. See *Black*, 234 Kan. at 843.

With regard to damages, there is no question that the complete failure of the air conditioner's operation led to the buyer replacing it. As this court has concluded:

"The general measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. K.S.A: 84-2-714(2). As concerns used or secondhand goods it is generally understood that the measure of damages is the cost of repair when repair is possible." *International Petroleum Services*, 230 Kan. at 460.

The district court heard evidence concerning the cost of the necessary repairs to the Mercedes' air conditioner. While there was testimony that employing used parts rather than new parts would reduce the cost of repairs and that the estimate quoted was too high, the court based its decision of monetary damages on the evidence of record. We will not substitute our judgment for that of the district court when the district court's decision is supported by substantial competent evidence. *In re Estate of Hjersted*, 285 Kan. at 571.

We find that there is substantial competent evidence to support the district court's conclusion that the implied warranty of merchantability in this transaction was not limited to only the Mercedes' major components affecting transportation, but rather extended at a minimum to the vehicle's air conditioning unit. We also find that there was substantial competent evidence to demonstrate that the air conditioning unit was defective at the time of sale and that the required repairs would cost $3,474. Accordingly, we reverse the Court of Appeals' reversal of the district court's judgment in favor of the Hodgeses and affirm the district court's decision.

ATTORNEY FEES

In light of our conclusion that the district court's decision that the air conditioning unit was covered by the implied warranty of merchantability, we must address the Hodgeses' claim that the dis-

trict court improperly denied their request for attorney fees under K.S.A. 61-2709(a).

The district court found that although the Hodgeses were entitled to the cost of repairing the Mercedes' air conditioner based on the implied warranty of merchantability, attorney fees were not warranted because Johnson's actions relating to the air conditioner did not rise "to a level of misrepresentation." The Court of Appeals majority found that the district court had applied the wrong legal standard for attorney fees in small claims cases, as K.S.A. 61-2709(a) requires that the court award an appellee reasonable attorney fees if the appellee is successful on appeal. But because it concluded that the air conditioner was not covered by the implied warranty, the Court of Appeals held that the Hodgeses were not "successful parties" within the meaning of K.S.A. 61-2709(a); thus, attorney fees were not warranted. *Hodges*, 39 Kan. App. 2d at 226-27.

*Discussion*

In Kansas, courts are not permitted to award attorney fees without specific statutory authorization. *Hawkinson v. Bennett*, 265 Kan. 564, 574-75, 962 P.2d 445 (1998). K.S.A. 61-2709, which governs appeals from actions brought in small claims court, states that "[i]f the appellee is successful on an appeal pursuant to this subsection, the court *shall award* to the appellee . . . reasonable attorney fees incurred by the appellee on appeal." (Emphasis added.) K.S.A. 61-2709(a).

Because the award of attorney fees under K.S.A. 61-2709 depends entirely on the court's interpretation of this statute, this court's review of a district court's decision to grant or deny attorney fees is unlimited. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008) (interpretation of a statute is a question of law over which appellate courts exercise unlimited review).

This court considered the scope of the attorney-fees provision in K.S.A. 61-2709(a) in *Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327 (1983). *Szoboszlay* noted that under the statute, "the trial court *is required* to award the successful appellee reasonable at-

torney fees incurred in the appeal." 233 Kan. at 482. In defining the phrase "successful party," the *Szoboszlay* court adopted the Court of Appeals' analysis in *Schuh v. Educational Reading Services of Kansas*, 6 Kan. App. 2d 100, 101, 626 P.2d 1219 (1981):

" 'The term "successful party" has been held to be synonymous with "prevailing party." [Citation omitted.] The term "prevailing party" is defined in Black's Law Dictionary 1069 (5th ed. 1979) as:

" ' "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. (Citation omitted.) The party ultimately prevailing when the matter is finally set at rest."

" 'With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his favor at the conclusion of the entire case.' [Citations omitted.]" *Szoboszlay*, 233 Kan. at 482.

The attorney fees provision in K.S.A. 61-2709(a) is mandatory. If an appellee prevails on appeal, then the court "shall" impose reasonable attorney fees. *Szoboszlay*, 233 Kan. at 482. We have determined that the district court correctly entered judgment in favor of the Hodgeses for the cost of repairing the air conditioning unit in the Mercedes when Johnson appealed the small claims award. Thus, under the plain language of K.S.A. 61-2709(a), the Hodgeses are the successful appellees and are entitled to "reasonable attorney fees incurred . . . on appeal." K.S.A. 61-2709(a). We therefore reverse the district court's denial of the Hodgeses' request for attorney fees and remand the case to the district court for an assessment of an appropriate award of attorney fees under K.S.A. 61-2709(a).

*Equal Protection*

Johnson claims that the attorney-fees provision contained in K.S.A. 61-2709(a) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution since it only allows for attorney fees when an *appellee* is successful on appeal from a small claims action. Johnson asserts that because the statute treats appellants and appellees differently, it is unconstitutional.

The Equal Protection Clause of the United States Constitution is found in the Fourteenth Amendment, which provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

This principle of equal protection is also embodied in the Kansas Constitution Bill of Rights, § 1: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." See *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 251, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

The constitutional guarantee of equal protection is implicated when a statute treats arguably indistinguishable classes of people differently. *Smith v. Printup*, 254 Kan. 315, 321, 866 P.2d 985 (1993).

When a court finds that a classification system treats similarly situated persons differently and so implicates equal protection, it must determine which level of scrutiny should be employed to evaluate the constitutionality of that classification:

"(1) the rational basis test to determine whether a statutory classification bears some reasonable relationship to a valid legislative purpose; (2) the heightened scrutiny test to determine whether a statutory classification substantially furthers a legitimate legislative purpose; [or] (3) the strict scrutiny test to determine whether a statutory classification is necessary to serve some compelling State interest." *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. 857, 878, 112 P.3d 138 (2005) (citing *Bair v. Peck*, 248 Kan. 824, 830-31, 811 P.2d 1176 [1991]).

This court explained in *Peden* that "[t]he rational basis standard (sometimes referred to as the reasonable basis test) applies to laws which result in some economic inequality." 261 Kan. at 252. The rational basis standard is a "very lenient standard." See 261 Kan. at 252, 258. A classification system violates this test only if it "rests on grounds wholly irrelevant to the achievement of the State's legitimate objective." *Leiker v. Gafford*, 245 Kan. 325, 363-64, 778

P.2d 823 (1989). Nevertheless, a classification " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [Citation omitted.]" *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1018, 850 P.2d 773 (1993).

When a plaintiff attacks a statute as facially unconstitutional under the Equal Protection Clause, the plaintiff must demonstrate that "no set of circumstances exist" that survive constitutional muster. *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 850-51, 942 P.2d 591 (1997). For this reason, it is not enough to "[s]imply point[] out that [a statute] might not be rationally related to the state objectives sought under one set of facts." 262 Kan. at 850-51. Instead, "a plaintiff asserting the unconstitutionality of a statute under the rational basis standard 'ha[s] the burden "to negative every conceivable basis which might support [the classification]." ' [Citations omitted.]" *Peden*, 261 Kan. at 253.

Johnson's argument that K.S.A. 61-2709(a) violates the Equal Protection Clause relies primarily on the United States Supreme Court's decision in *Gulf, Colorado & Santa Fé R'y. v. Ellis*, 165 U.S. 150, 41 L. Ed. 666, 17 S. Ct. 255 (1897), which held that a Texas statute violated equal protection because it allowed plaintiffs in cases against railroads to recover reasonable attorney fees but did not allow the railroads to collect such fees. The Hodgeses argue that this case does not indicate that the attorney-fees provision in K.S.A. 61-2709(a) is unconstitutional because the Texas statute in *Ellis* singled out a particular class of people as not receiving attorney fees—railroads—whereas K.S.A. 61-2709(a) only distinguishes between appellees and appellants.

Although appellants and appellees are arguably indistinguishable in that both party classifications are faced with the costs of a pending appeal, we conclude that the distinction for attorney fees drawn by K.S.A. 61-2709(a) has a rational basis and thus does not violate the Equal Protection Clause.

The Small Claims Procedure Act, K.S.A. 61-2701 *et seq.*, was designed to "provide a forum for the speedy trial of small claims." K.S.A. 61-2712. In order for a claim to be brought in small claims

court, the value of the damages sought may not exceed $4,000. K.S.A. 61-2703(a). In general, the parties in small claims actions are not represented by attorneys. K.S.A. 2007 Supp. 61-2707(a). When a party is unsuccessful before a small claims court and appeals to the district court pursuant to K.S.A. 61-2709(a), the case is tried de novo and—as this case demonstrates—may become unwieldy. As a result, it is practically a foregone conclusion that attorneys will be involved and that the original checks that keep expenses low and allow for expedited resolutions of small claims will no longer apply. These reasons provide a rational basis for the legislature's decision to restrict attorney fee awards to appellees in such cases, because the appellants have made the conscious decision in light of the costs that might accrue to nevertheless pursue an appeal.

The attorney-fees provision in K.S.A. 61-2709(a) does not violate the state or federal guarantees of equal protection.

### Attorney Fees for the Present Appeal

The Hodgeses have also moved this court pursuant to Supreme Court Rules 5.01 (2008 Kan. Ct. R. Annot. 33) and 7.07 (2008 Kan. Ct. R. Annot. 60) for attorney fees incurred during the pendency of the appeal before this court. In an affidavit accompanying their motion for appellate attorney fees, counsel for the Hodgeses indicates that the total cost for bringing this matter before the Kansas Supreme Court was $4,106.50, which includes $3,780 in attorney services and $326.50 in other expenses (including copying charges, postage, and travel to Topeka). Although Johnson filed a response to the attorney-fees motion, his response objected to the grant of attorney fees in general because he did not believe the Hodgeses would be successful on appeal—not on counsel's accounting of attorney fees and other expenses.

This court has authority to award attorney fees for services on appeal in cases where the district court had authority to award attorney fees. Supreme Court Rule 7.07(b) (2008 Kan. Ct. R. Annot. 60). Because the district court was required under K.S.A. 61-2709(a) to award the Hodgeses reasonable attorney fees as the

successful appellees from a small claims award, we have discretion to award attorney fees on appeal.

We have considered the Hodgeses' motion with attachments and conclude that the attorney fees and costs requested are reasonable. We therefore grant the Hodgeses' request for reasonable attorney fees incurred during the pendency of their case before this court and award the Hodgeses $3,780 in attorney fees and $326.50 in other expenses. Since the district court erroneously denied the Hodgeses' request for reasonable attorney fees and we have determined that reasonable fees should be awarded under K.S.A. 61-2709(a), we remand the cause to the district court for an assessment of an appropriate award of attorney fees incurred during the litigation of the cause before that court.

The Court of Appeals' decision reversing the district court is reversed. The district court's decision affirming the judgment in favor of the Hodgeses in the amount of $3,474, together with $56 in costs plus interest, is affirmed. The Hodgeses' motion for attorney fees incurred during the pendency of the case before this court is granted; we therefore award the Hodgeses $3,780 in attorney fees and $326.50 in other expenses. The district court's denial of the Hodgeses' request for attorney fees is reversed, and the case is remanded with directions for the district court to award the Hodgeses reasonable attorney fees incurred during litigation before that court.

NUSS, J., not participating.

LARSON, S.J., assigned■