(271 P.3d 1257)
No. 105,889

In the Matter of the Guardianship and Conservatorship of
BERNETTA F. BENHAM.

Opinion filed February 17, 2012.

*Kip Elliot,* of Disability Rights Center of Kansas, of Topeka, for appellant, Bernetta F. Benham.

*R. Douglas Sebelius,* of Sebelius & Griffiths, LLP, of Norton, for appellee, guardian/conservator Karen Glenn.

Before MARQUARDT, P.J., PIERRON, J., and JEAN F. SHEPHERD, District Judge Retired, assigned.

MARQUARDT, J.: Bernetta F. Benham, an adult with progressive dementia, is represented by Kip Elliot of the Disability Rights Center of Kansas. She challenges the district court's decision that her guardian, Karen Glenn, has placed her in the least restrictive setting appropriate to her needs that is reasonably available. Bernetta also appeals the denial of her motion to discharge her court-appointed attorney. We affirm.

## FACTS

Bernetta, a 79-year-old woman, currently resides at the Andbe Home, Inc., a 70-bed adult care nursing facility in Norton, Kansas. Bernetta's husband, Wilbur, and her sister, Karen Glenn, also live in Norton.

Prompted by Bernetta's declining health and financial problems, in April 2007, Bernetta and Wilbur moved from Arizona to Norton, Kansas. In August 2007, Bernetta began seeing Dr. Glenda Maurer, who diagnosed Bernetta with mild dementia, Ehlers Danlos Syndrome, glaucoma, hypertension, depression, and hyperlipidemia. Glenn believed that Bernetta was not receiving the care she needed from Wilbur and discussed her concerns with Dr. Maurer.

In the spring of 2008, Wilbur told family members that he intended to take Bernetta on an extended trip to Colorado. Glenn discouraged Wilbur from taking Bernetta to Colorado because of Bernetta's health problems. Wilbur, notwithstanding the admonition, took Bernetta to Colorado. On July 11, 2008, Bernetta was admitted to a Colorado hospital where she was diagnosed with pneumonia and chronic obstructive pulmonary disease. She remained in the hospital for about a week before returning to Norton, where she was again hospitalized. She was discharged from the Norton hospital on August 1, 2008, to the Andbe Home, where she would receive rehabilitation, skilled supervision, and 24-hour nursing assistance. When Bernetta was admitted to the Andbe Home, she was unable to walk, could not eat, was on oxygen, and had a catheter because of a urinary infection. Throughout the fol-

lowing months, Bernetta became more mobile and some of her health conditions stabilized.

On April 29, 2009, Glenn filed a petition to be appointed Bernetta's guardian and conservator. The court appointed Glenn as Bernetta's temporary guardian and set a date for a hearing on the petition. Glenn proposed a Guardianship and Conservatorship Plan (The Plan), which was approved by Rance E. Ames, Wilbur's attorney; Kip Elliot of the Disability Rights Center of Kansas (DRCK), who was acting as Bernetta's attorney; and Melissa M. Schoen, Bernetta's guardian ad litem. The Plan was filed with the court on January 27, 2010. The district court entered an order appointing Glenn as Bernetta's guardian and conservator on March 29, 2010, and approved The Plan submitted by Glenn.

The Plan provided:

"[I]f the interested parties hereto cannot agree upon whether to move the ward to a less restrictive setting or continue her placement in the adult care nursing facility, the parties agree to submit the issue of where the ward shall reside to the Court for disposition on March 25, 2010."

Elliot filed a motion on March 23, 2010, to continue the hearing. The district court entered an order continuing the hearing to August 23 and 24, 2010; however, both Elliot and Glenn filed objections to some provisions of the order. The district court settled the objections in an order filed on April 22, 2010, stating that the only issue for determination at the hearing is "[w]hether the guardian has properly chosen Andbe Home, Inc., a nursing home, as the least restrictive setting appropriate to the needs of Bernetta Benham, which is reasonably available as required by K.S.A. 59-3075(b)(4)."

The hearing began as scheduled on August 23, 2010; however, a mistrial was declared after District Judge Edward Bouker realized a conflict with a material witness. The hearing was rescheduled. After 3 days of testimony beginning on November 16, 2010, assigned Senior Judge Jack L. Burr determined by clear and convincing evidence that the Andbe Home was the least restrictive setting that was reasonably available to Bernetta. Elliott filed a timely notice of appeal on Bernetta's behalf.

The notice of appeal raises two issues:

"I. The district court erroneously determined that Glenn, Bernetta's guardian, has placed her in the least restrictive setting available.

"II. The district erroneously denied Mrs. Benham's motion to discharge Melissa Schoen as her court appointed attorney."

## STANDARD OF REVIEW

On appeal, Elliot argues that the district court "erroneously determined that Glenn, Bernetta's guardian, has placed her in the least restrictive setting available."

The parties agree that the district court's determination of whether a guardian's placement of its ward is in the least restrictive setting available is a finding of fact.

"An appellate court generally reviews a district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. In evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. A court ordinarily presumes that the district court found all facts necessary to support its judgment." *Hodges v. Johnson*, 288 Kan. 56, Syl. ¶ 7, 199 P.3d 1251 (2009).

## BURDEN OF PROOF

K.S.A. 2010 Supp. 59-3075 defines a guardian's duties, responsibilities, powers, and authorities. In addition to the statutory duties, The Plan provides:

"The guardian will assure that the ward [Bernetta] resides in *the least restrictive setting appropriate to the needs of the ward and which is reasonabl[y] available.* If proper and feasible, the guardian will assist the ward in moving to a less restrictive setting than her present adult care nursing facility, where she can reside with her husband, Wilbur Benham; provided that all the ward's needs can be met with available, appropriate services. So long as the Ward's needs are *appropriately and sufficiently* met in such less restrictive setting, the ward will not be placed in the adult care nursing facility setting without Court authorization after notice to all interested parties, including Wilbur Benham." (Emphasis added.)

Elliot argues in his appellate brief that Glenn has an affirmative duty to prove that Bernetta is living in the least restrictive setting

available. However, during the August 2010 hearing, Elliot of the DRCK stated:

"[T]hat a guardian has the obligation to place the ward in the least restrictive environment. My understanding is that the guardian in this case believes that's the Andbe Nursing Home. We are challenging that.

"You know, this is an interesting issue because I could not find any specific case law on this burden issue on whether we carry that full burden, or not. I think that, yes, if we're challenging it, we have that burden, but I also think the guardian has the burden to show the Court that she has, that this is the least restrictive environment, and I think they plan on doing that."

Then the judge stated, "Well, then, it seems to me that with that admission, the burden is upon you to show the placement chosen by the guardian is inappropriate." Elliot responded, "I think that's, that's right at this point."

Because Bernetta has challenged Glenn's decision, she has the burden to prove Glenn's decision does not conform to the requirements of The Plan and statute for her placement. In other words, a ward has the burden of proof when challenging the guardian's decision that the ward has been placed in the least restrictive setting appropriate to the needs of the ward which is reasonably available.

## LEAST RESTRICTIVE PLACEMENT FOR A WARD

Under K.S.A. 2010 Supp. 59-3075(b)(4), a guardian has the duty and responsibility "to assure that the ward resides in the least restrictive setting appropriate to the needs of the ward and which is reasonably available." The guardianship statutes do not define the words "least restrictive setting." In Bernetta's appellate brief, Elliot cites Colorado, Florida, and New Hampshire statutes that define similar phrases; however, none of the citations deal with a guardianship and conservatorship case. See, e.g., Colo. Rev. Stat. § 27-10.5-102 (24) (2011), that defines least restrictive environment for developmentally disabled individuals.

At the Andbe Home, Bernetta is provided with skilled 24-hour-a-day care and opportunities for socialization. Elliot argues in Bernetta's appellate brief that a nursing home such as the Andbe Home is "one of the most restrictive settings a person can be placed

into." He cites to section 2d of The Plan where the parties, including Elliot, agreed that Glenn would assist Bernetta in moving to a less restrictive setting so long as the move is proper and feasible and all her needs can be met "with available, appropriate services."

Following a 3-day bench hearing, the district court found that "the evidence in this case is clear and convincing that the most stable least restrictive setting appropriate to the needs of Mrs. Bernetta Benham and which is reasonably available at this time is in Norton, Kansas at the Andbe Home in which Benham is currently residing."

The district court made several findings of fact that support its conclusion, including; (1) Bernetta's health conditions had worsened or remained static, and (2) in her July 2010 medical evaluation, Dr. Maurer stated that Bernetta was not aware of the date or current season, could not recall short lists, did not know the names of her caregivers, and did not remember when she last saw Wilbur. In her report to the district court, Dr. Maurer stated that Bernetta's "mental status has declined since her initial evaluation upon admission . . . progression of [dementia] is expected, further mental decline is predicted."

Wilbur claims that he can provide adequate care for Bernetta in their home if he was provided full-time assistance. However, the evidence at the hearing is that Wilbur is not able to physically provide the services necessary to care for Bernetta. Wilbur and Bernetta suggest that she could live with Wilbur if provided support for household chores, laundry, medications, peri care and general nursing. While nurses could provide extended daily care, it would require multiple in-home programs from various agencies that may not always be available. Dr. Maurer testified that the majority of these services would not be available in Norton. Further, Dr. Maurer explained that Bernetta needs a stable and consistent environment.

Elliot states that there "are appropriate services available to allow Mrs. Benham to move back into the community and live with her husband of 43 years." He presented evidence in general terms about services that could be provided for Bernetta through federally funded programs if she were to move to a larger city.

Although the parties may not agree on who can best provide the care, Wilbur, Glenn, and the medical professionals agree that Bernetta will continue to require full-time care. At the time of the hearings, Bernetta was suffering from dementia, hypertension, emphysema, and recurring urinary tract infections, while also requiring a special diet. The district court determined that there are no programs outside of the Andbe Home available in Norton County, Kansas. If Bernetta were to move to a larger city, she may be able to obtain 24-hour care with assistance from other agencies and with appropriate federal funding. In considering these other options, Dr. Maurer testified that she has "considered it and felt that no viable alternative has—has been truly presented."

The Andbe Home provides Bernetta with a stable and consistent environment. Each day Bernetta has skilled professionals assist her with physical therapy. Bernetta has help with selecting her clothing and is provided a healthy diet that is personalized to her specific needs. She is able to participate in organized activities and daily programs that promote socialization. Elliot claims in Bernetta's appellate brief that she "testified consistently at both hearings . . . that she wanted to live with husband in their own home." However, when she was asked if there was anything that could be done to improve her living situation, Bernetta replied, "[N]o, they look after me very well." Dr. Maurer reported that she asked Bernetta if she would like to live anywhere else and she responded, "No, I am happy."

Based on the evidence in the record on appeal, substantial competent evidence supports the district court's findings and its conclusions of law. Therefore, we affirm the decision that Bernetta is residing in the least restrictive setting appropriate to her needs which is reasonably available as required by K.S.A. 2010 Supp. 59-3075(b)(4).

## COURT-APPOINTED ATTORNEY

On October 26, 2010, Elliot filed a "Motion to Discharge Melissa Schoen as Bernetta Benham's Court Appointed Attorney." Elliot argued that because he represents Bernetta, Schoen was im-

properly being retained as her attorney. At the start of the hearing, the district judge stated:

"The motion, Mr. Elliot, that you filed concerning Ms. Schoen will be denied, and I want to make clear that if it hasn't been done in the past, I am doing it now, I am appointing her as a guardian ad litem. I need all the help I can get and so we'll proceed with Ms. Schoen in that capacity. She's been in involved from— essentially from the inception and I would assume may have gained some knowledge that would be beneficial."

Generally, the district court has the authority to appoint a guardian ad litem in any probate proceeding. See K.S.A. 59-2205. "[A]n attorney may be appointed by the court if requested, in writing, by the ward, conservatee, guardian or conservator, or *upon the court's own motion*." (Emphasis added.) K.S.A. 59-3063(a)(3). The statute gives the court the authority to appoint a guardian ad litem on its own motion. The district court did not err in denying the motion to discharge Schoen.

Affirmed.