A00A1007. LATHAM HOMES SANITATION, INC. v. CSX
TRANSPORTATION, INC. et al.
(538 SE2d 107)

ELDRIDGE, Judge.

On August 23, 1996, Latham Homes Sanitation, Inc. and Mattie B. Acey brought a petition for the removal of obstructions from a private way in the Probate Court of Fulton County against CSX Transportation, Inc., because on July 30, 1996, CSX removed the railroad crossing and placed broken asphalt, railroad ties, and other debris, thereby blocking the crossing that they had previously used. They sought emergency removal of the obstruction under OCGA § 44-9-59, but also sought damages for interfering with their use of the private way. On October 23, 1996, a hearing was held, and the matter was taken under advisement; a final order was rendered on July 15, 1997.

---

The final order found that jurisdiction as to damage issues lay in Fulton Superior Court and transferred such claims. The probate court ruled that, as to Acey, CSX must remove the obstructions; however, as to Latham, the trial court ruled in favor of CSX. Latham appealed, and CSX cross-appealed.

Latham and CSX both contend that the trial court erred. We affirm the probate court, but we find that the probate court lacked subject matter jurisdiction to determine title and vacate the judgment with directions.

D. D. Mims was the remote grantor in title of both Latham and Acey who owned adjoining land, which is separated from U. S. Highway 29 by the railroad right-of-way of CSX, and was the grantor of the railroad right-of-way.

On August 15, 1849, and again on March 16, 1853, Mims conveyed a 200-foot "right-of-way" across his land to Atlanta & LaGrange Railroad, predecessor to CSX, for $5 for the stated purpose of locating railroad tracks across it. Mims retained the right to cultivate to within ten feet of the tracks and a reversion of the right-of-way, if the railroad was not established; he granted the railroad the right to cut and remove trees and other growth along the right-of-way. The location of the right-of-way was not described but was left to the discretion of the railroad in the first, but not the second, conveyance. The conveyances had no provision for a private way across the railroad right-of-way.

> [T]he crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention many elements enter into the question. The whole deed or instrument must be looked to, and not merely disjointed parts of it. The recitals in the deed, the contract, the subject-matter, the object, purposes, and nature of the restrictions or limitations, if any, or the absence of such, and the attendant facts and circumstances of the parties at the time of the making of the conveyance are all to be considered. [OCGA § 44-5-34.]

*Jackson v. Rogers*, 205 Ga. 581, 586-587 (54 SE2d 132) (1949).

It appears that the conveyance of Mims did not intend to convey anything more to the railroad than an easement for the right-of-way, because the initial conveyance specified only a quantity of land affected, 100 feet on either side of the tracks, and the direction; it left the location of the right-of-way to be later determined by the railroad and retained the use of the land for agricultural purposes up to ten feet from the tracks. *Ga. Power Co. v. Leonard*, 187 Ga. 608, 610-611 (2) (1 SE2d 579) (1939). This discretion to pick the land conveyed

after the execution of the deed would be inconsistent with conveyance of title, but would not be inconsistent with an easement that is only an encumbrance on the land. Also, Mims gave the express right to the railroad to cut timber and clear undergrowth from the right-of-way, which is inconsistent with the conveyance of title, where the owner has full dominion and control, but not in an easement. See *Askew v. Spence*, 210 Ga. 279 (79 SE2d 531) (1954).

Further, Mims retained a reversionary interest over the right-of-way in the event that the railroad was never formed, which is inconsistent with a conveyance of title. See *Tompkins v. Atlantic Coast Line R. Co.*, 213 Ga. 48 (96 SE2d 603) (1957). While a railroad right-of-way may be more than a mere easement and is, in substance, an interest in land "special and exclusive in its nature," such does not constitute a fee simple title to the land adverse to the grantor, who intends to retain all other rights within the right-of-way that do not conflict with the railroad's use, now or in the future. *Jackson v. Sorrells*, 212 Ga. 333, 334-335 (92 SE2d 513) (1956); cf. *Barber v. Southern R. Co.*, 247 Ga. 84 (274 SE2d 336) (1981). However, the deed form language of "successors and assigns," "forever in fee simple," and "will warrant and defend the title thereof, against the claim of all persons" has the attributes of a deed of title in fee simple by warranty deed. *Jackson v. Rogers*, supra at 586-587; *Safeco Title Ins. Co. v. C & S Nat. Bank*, 190 Ga. App. 809, 810 (1) (380 SE2d 477) (1989). Thus, there exists a conflict in the terms of the deed as to the grantor's intent that a court with proper subject matter jurisdiction over title to land must construe.

Clearly, Atlanta & West Point Railroad, successor in title to Atlanta & LaGrange Railroad and predecessor of CSX, recognized some legal property interest in a private road in Mims' grantees because of constructive notice from recorded deed records and actual notice of the existence of the private crossing over the tracks. The railroad never took any adverse position or action against the use of the crossing until 1973 when it entered into a crossing license to help clear the railroad title.

On April 23, 1898, Mims' administrator conveyed all of the subject property, including the right-of-way to Oscar Mims and S. S. Hathcock. On April 28, 1939, Chap Cooper received a deed to the same land, including the right-of-way. By deed dated June 8, 1948, Cooper conveyed this land to Mamie Duncan Clarke, which included "the right to use the unnamed settlement road now extending northerly from the property above described across other property now owned by Chap Cooper, crossing the Right-of-Way of the A. & W. P. Railroad and entering Roosevelt Highway." On May 29, 1969, Cooper's wife, Ruth S. Cooper, conveyed the Latham property to J. F. Conway. On October 18, 1972, Conway conveyed part of Mims' land

to Ply-Marts, Inc., containing a perpetual easement to Highway 29. On March 23, 1994, Ply-Marts conveyed its interest to Latham Homes Sanitation Company, Inc. with a specific grant of use to the "settlement road." On June 13, 1984, Clarke deeded her part of Mims' land to Randolph Mahaffey and J. Richard Mahaffey, including use of the "settlement road."

On April 2, 1973, Ply-Marts and Atlanta & West Point Railroad Company entered into an agreement in which Ply-Marts' claim to the "settlement road" was abandoned for the right to install and maintain at Ply-Marts' expense a new paved road or driveway and crossing, which it called a private road crossing, across the right-of-way to Highway 29. The "settlement road" was permanently abandoned by Ply-Marts in this agreement, and Ply-Marts agreed to close this crossing and the "settlement road." Also, Ply-Marts agreed to prohibit use by anyone else of the new private road and crossing; thus, it had to prohibit the Clarkes' use of the new road and crossing to reach their home.

After completing the new road, Ply-Marts closed the "settlement road" and crossing under the crossing license; when they tried to stop the Clarkes' use of the new road, Ply-Marts discovered the Clarkes' legal interest in the "settlement road" and the old crossing, now closed.

On May 7, 1973, Mrs. Clarke was 75 years old. Therefore, on May 7, 1973, the railroad, Ply-Marts, Kenneth T. Clarke, and Mamie Duncan Clarke, his wife, had to execute a supplemental agreement that incorporated the April 2, 1973 agreement by reference and included a 30-day termination provision to allow the Clarkes to use the new crossing and paved road, because the old "settlement road" and crossing had been removed. The supplemental agreement made no statement that the Clarkes were abandoning any and all interest in the "settlement road" and crossing, although the earlier crossing agreement of April 2 did spell out the abandonment of the "settlement road" crossing, which was incorporated by reference into the May 7 supplemental crossing license. Both license agreements gave either party to the agreement a right to terminate the crossing with 30 days written notice, which goes to the inadequacy of consideration of the license when compared to a prescriptive easement. Had the supplemental crossing license not been executed, the Clarkes would have been compelled by necessity to go to court to gain access to their landlocked home, and their prescriptive rights in the "settlement road" would have been preserved by court action. The age, disparity of mental ability, and the inadequacy of consideration might justify setting aside Mrs. Clarke's crossing agreement in equity in the superior court; however, for purposes of this case, such factors play a part in reasonable reliance by Mrs. Clarke to her detriment for purposes

of promissory estoppel. See generally as to disparity of mental ability OCGA § 23-2-2; *Southern R. Co. v. Lawson*, 256 Ga. 798, 800 (1) (a) (353 SE2d 491) (1987); *Bailey v. Williams*, 215 Ga. 395, 397 (1) (110 SE2d 673) (1959).

When CSX took over on May 5, 1994, it entered into a new private road grade crossing agreement with Latham, to which Acey was not a party or signatory. In this agreement, either party had the right to terminate the crossing license with 30 days written notice. On September 24, 1994, Ply-Marts executed a quitclaim deed to Latham giving it a perpetual easement. CSX contended that Latham terminated the crossing agreement on May 13, 1996, in writing and that CSX accepted the termination, closing the crossing on July 30, 1996. After Latham gave the termination notice, it learned that Acey had an interest in the private road and crossing and would be landlocked; Latham tried to rescind its termination, but CSX refused the withdrawal.

Since the Probate Court of Fulton County lacked subject matter jurisdiction to decide title to land, see generally *In re Estate of Adamson*, 215 Ga. App. 613 (451 SE2d 501) (1994), then it could not decide title, even as an ancillary matter, and we cannot determine such issue either. Thus, this opinion does not decide the title to the right-of-way as to CSX, Latham, or Acey.

For purposes of this case, from 1898 until 1973, the grantor of both Latham and Acey had, used, and maintained the "settlement road" across the Atlanta & West Point tracks within the meaning of OCGA § 44-9-59 (a), which constituted a prescriptive interest adverse to the railroad's interest. See OCGA §§ 44-9-1; 44-9-40; *Belcher v. Kelly*, 143 Ga. 525 (4) (85 SE 696) (1915); *Holloway v. Birdsong*, 139 Ga. 316, 317 (77 SE 146) (1913); *Ga. Pacific Corp. v. Johns*, 204 Ga. App. 594 (420 SE2d 39) (1992); *Trednick v. Kramer*, 190 Ga. App. 684, 685 (379 SE2d 633) (1989). Plaintiffs showed that they had constant and uninterrupted use for seven years prior to 1973 on the "settlement road," and from 1973 until 1996 across the new paved road which was maintained for both their benefits by Ply-Marts and Latham by consent of the railroad. *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360 (434 SE2d 477) (1993); *Goodwin v. Bickers*, 22 Ga. App. 13, 14 (95 SE 311) (1918).

Atlanta & West Point Railroad granted Latham's and Acey's grantors a crossing license in return for abandoning their interest in the "settlement road" crossing. CSX contended in the probate court that the private road, which it allowed to be built and maintained across its right-of-way, exceeded the permissible private road by two to three feet so that Latham and Acey forfeited all rights in the private road as a prescriptive private road, i.e., 21 feet 6 inches to 23 feet 3 inches. However, Latham substantially complied with the stat-

ute, i.e., OCGA § 44-9-59, so that any forfeiture would apply only to such two to three feet that the private road may have exceeded twenty feet and not to the remaining twenty feet of private road. See OCGA § 1-3-1 (c); see generally *O'Neal v. Spencer*, 203 Ga. 588 (47 SE2d 646) (1948) (substantial compliance with a statute). Further, such road width in excess of 20 feet contravened the crossing license agreements for 23 years as adverse possession. Also, CSX's evidence showed the width of the new private road 29 feet south of the CSX line on the right-of-way, but no evidence was given as to the width of the private road at the crossing or north of the tracks on the right-of-way.

> It has been held, however, that where the general width of a private way does not exceed [20] feet, the mere existence of a few wider places will not defeat the right of the users. Accordingly, the increased width of the private road as it formerly turned out in either direction into a public road can not be said, as a matter of law, to have caused a forfeiture of the petitioner's rights.

*Barnett v. Davis*, 38 Ga. App. 494, 495 (144 SE 330) (1928); cf. *Church v. York*, 212 Ga. 135, 136 (91 SE2d 9) (1956).

Latham's rights in the crossing license were terminated under the contractual terms of the three license agreements, which it freely and voluntarily entered into. Latham gave the 30-day notice of termination, and CSX accepted. Latham's attempt to rescind the termination notice was ineffective. CSX's written notice of acceptance of Latham's termination in itself, alone, was sufficient to constitute a termination under the agreement by CSX. Thus, the probate court correctly denied Latham relief, because Latham had no prescriptive easement any longer, only a crossing license that appeared to be terminated. The probate court lacked subject matter jurisdiction to determine if the license agreement had been properly terminated and only had jurisdiction to determine if Latham had a prescriptive easement for a private way. Since in 1973 it surrendered all prescriptive rights in the "settlement road" freely and voluntarily for the crossing licenses, then Latham had no prescriptive rights for purposes of OCGA § 44-9-59. The probate court properly denied Latham relief, but for the wrong reason.

The principle of promissory estoppel applies in this case to Acey, as a third party, whose grantor Mamie Clarke was compelled to surrender her prescriptive interest in the "settlement road" by the crossing license of Ply-Marts and Latham over the new paved crossing, because Clarke's ingress and egress over Ply-Marts' land on the "settlement road" was terminated under the license agreement by

Ply-Marts and the railroad, and she had to sign the supplemental crossing license to have ingress and egress to her home then over the new crossing that had replaced the settlement crossing. Clarke relied to her detriment upon the substitution of the license for the new paved road and new crossing in 1973 for the prescriptive "settlement road" crossing rights to give her substantially the equivalent of what she gave up by signing the license. OCGA § 13-3-44 (a); *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322 (1) (283 SE2d 262) (1981); *Mooney v. Mooney*, 235 Ga. App. 117, 119 (1) (508 SE2d 766) (1998); *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828, 830 (3) (302 SE2d 734) (1983).

However, CSX has to maintain the new crossing for Acey's use, because CSX allowed the new crossing to be built and maintained for nearly 23 years as a substitution for the "settlement road" for her, which was the substitution of prescriptive rights from one private way to another. Acey's grantor, Clarke, had reasonably relied to her detriment on being allowed the same use of the new road and crossing instead of the "settlement road," which had already been abandoned at the time of her execution; Clarke had been forced to sign the crossing agreement, retroactively agreeing to its abandonment after the railroad and Ply-Marts had already closed it. Further, Acey never executed a crossing license with CSX. OCGA §§ 13-3-44 (a); 44-9-1; 44-9-59; *Knotts Landing Corp. v. Lathem*, 256 Ga. 321, 324 (3) (348 SE2d 651) (1986); *Irvin v. Lowe's of Gainesville*, supra. Thus, the probate court entered judgment in Acey's favor correctly but, again, for the wrong reason.

To the extent that the probate court made a determination as to title to land, the judgment is vacated for lack of subject matter jurisdiction. However, both the probate court and this Court can determine that the plaintiffs had standing to bring the action in the probate court without deciding title. To have standing, all the plaintiffs must have is prescriptive legal interest in the private way at some time. See Ga. Const., Art. VI, Sec. IV, Par. I; Art. VI, Sec. VI, Par. III (1); see also *Ingold, Inc. v. Adair*, 247 Ga. 155 (274 SE2d 560) (1981); *In re Estate of Adamson*, supra at 613. The right, title, and property interests of the plaintiffs must be decided by the Superior Court of Fulton County prior to determining what damages, if any, plaintiffs have sustained by the obstruction of the private crossing. Therefore, the transfer of such remaining claims was proper by the probate court. Uniform Transfer Rules, 251 Ga. 893-895 (1984).

We direct that the probate court enter judgment finding that the plaintiffs had standing; that Acey was entitled to the removal of the obstruction of a private road, because she had a prescriptive interest; that Latham no longer had a prescriptive interest, because it had surrendered such by executing the crossing licenses; and that all

other issues be transferred to the Fulton Superior Court for adjudication.

*Judgment affirmed in part, vacated in part, and remanded with directions. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 4, 2000 —
RECONSIDERATION DENIED AUGUST 17, 2000

*Aubrey T. Villines, Jr., Heidi A. Honis,* for appellant.
*Casey, Gilson & Williams, Matthew D. Williams, Glenn C. Tornillo,* for appellees.