# United States Court of Appeals for the Federal Circuit

---

**WILLIAM C. HARDY, BERTIE ANN HARDY, DOROTHY SCHAEFFER, EMMA TRIMBLE, FOR THEMSELVES AND AS REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2019-1793

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00388-MMS, Chief Judge Margaret M. Sweeney.

---

Decided:  July 15, 2020

---

THOMAS SCOTT STEWART, Stewart Wald & McCulley, LLC, Kansas City, MO, argued for plaintiffs-appellees. Also represented by ELIZABETH MCCULLEY.

ERIKA KRANZ, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JEFFREY B. CLARK, ERIC GRANT.

ILYA SHAPIRO, Cato Institute, Washington, DC, for amicus curiae Cato Institute.

MARK F. HEARNE, II, True North Law Group, LLC, St. Louis, MO, for amici curiae James W. Ely, Jr., National Association of Reversionary Property Owners, Southeastern Legal Foundation.  Also represented by STEPHEN S. DAVIS.

―――――――――――――

Before NEWMAN, LOURIE, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

This appeal concerns alleged takings of land along a railroad corridor in Newton County, Georgia under the National Trails System Act.  The Government appeals the United States Court of Federal Claims' conclusion on summary judgment that plaintiffs-appellees have a cognizable property interest in the land at issue.  The Government also challenges the trial court's holding that issuance of the applicable Notice of Interim Trail Use or Abandonment effected a temporary taking of certain parcels along the railroad corridor, which, in the Government's view, were erroneously included in the Notice's description of the land subject to the Notice.  For the reasons set forth below, we affirm the trial court's conclusion that plaintiffs-appellees have a cognizable property interest.  We vacate the trial court's decision that issuance of the applicable Notice of Interim Trail Use or Abandonment effected a taking of certain parcels along the railroad corridor and remand for further proceedings.

BACKGROUND

I

Plaintiffs-Appellees (collectively, "Hardy") own parcels of land along a railroad corridor in Newton County, Georgia through which the Central of Georgia Railway Company ("CGA" or "the Railroad") operated a rail line.

Hardy's parcels lie along CGA's rail line between Covington, Georgia and Newborn, Georgia. From 1889 to 1927, CGA's predecessor, the Middle Georgia & Atlantic Railway Company, acquired interests in Hardy's parcels through standard form deeds ("MG&AR form deeds"), through other deeds, and by condemnation.

County Road 213 separates eight of Hardy's parcels from CGA's rail line. In the 1950s, the owners of these parcels conveyed property rights by deed to the State Highway Department of Georgia to build a state aid road that became County Road 213 ("County Road 213 deeds").

On July 1, 2013, CGA applied for authority to abandon a portion of its rail line by filing a notice of exemption from formal abandonment proceedings with the Surface Transportation Board (STB), the federal agency with exclusive jurisdiction to regulate abandonment of most of the rail lines in the United States. *See* 49 U.S.C. § 10501(b). CGA sought to abandon "approximately 14.90 miles of rail line . . . extend[ing] from milepost E 65.80 (at the point of the Line's crossing of Route 229 in Newborn, Georgia) to milepost E 80.70 (near the intersection of Washington Street, SW and Turner Lake Road, SW, in Covington, Georgia)." J.A. 108. CGA's notice of exemption included "[a] detailed map showing the location of the Line" consistent with the above description. J.A. 109, 116–17.

On July 26, 2013, the Newton County Trail Path Foundation sought to prevent abandonment and filed a request for interim trail use with the STB pursuant to the National Trail Systems Act, indicating that the Foundation was interested in negotiating a trail use agreement with CGA. J.A. 158 (first citing 16 U.S.C. § 1247(d); and then citing 49 C.F.R. § 1152.29). CGA indicated its willingness to negotiate an interim trail use agreement with the Foundation and, on August 19, 2013, the STB issued a Notice of Interim Trail Use or Abandonment (NITU). Like CGA's notice of exemption, the NITU described the affected portion

of the rail line as "approximately 14.90 miles of rail line between milepost E 65.80 (at the point of the line's crossing of Route 229 in Newborn) and milepost E 80.70 (near the intersection of Washington Street, SW, and Turner Lake Road, SW, in Covington)." J.A. 173.

After several joint requests for extension, which the STB granted, CGA and the Foundation notified the STB in September 2016 that they had reached an interim trail use agreement. The notice of agreement identified the land to be converted to trail use as "cover[ing] the line extending between mileposts E-65.80 and E-80.70" and attached a map reflecting the location of milepost E-65.80 as at the intersection of the rail line and Route 229. J.A. 1500, 1502.

In October 2016, CGA notified the STB that after filing its notice of agreement, CGA determined that its notice of exemption improperly described the location of milepost E-65.80. J.A. 1512–14. Specifically, the map attached to CGA's notice of exemption "did not properly depict the precise location of milepost E-65.80," and the parenthetical descriptions of milepost E-65.80 referring to "the point of the Line's crossing of Route 229 in Newborn, Georgia" were also incorrect. J.A. 1512. CGA attached a corrected map and informed the STB that "[m]ilepost E-65.80 properly corresponds to a point just east of the Ziegler Road crossing west of downtown Newborn, Newton County, Georgia." J.A. 1513–14. CGA requested that the STB amend the July 2013 notice of exemption to recite the correct description for milepost E-65.80. On November 18, 2016, the STB accepted CGA's revised map and determined that CGA's "letters also demonstrate[d] the need to correct the parenthetical reference to milepost E 65.80 in the [August 2013] NITU." J.A. 1519–20. The STB made its decision modifying the August 2013 NITU "effective on its date of service." *Id.*

II

In May 2014, Hardy filed suit in the Court of Federal Claims, alleging that issuance of the August 2013 NITU effected Fifth Amendment takings by preventing CGA's abandonment of sections of the rail line running through Hardy's parcels. The Government argued that Hardy had no cognizable takings claims because the deeds at issue in this appeal each conveyed a fee simple interest such that Hardy had no property interest in the land at issue in this appeal. The parties cross-moved for summary judgment on liability.

Applying Georgia law, the Court of Federal Claims ultimately held that all deeds at issue in this appeal (the MG&AR form deeds, the County Road 213 deeds, and a railroad deed signed by W.B. Lee in 1894 ("the Lee deed")) conveyed easements. *Hardy v. United States*, 129 Fed. Cl. 513, 517–18 (2016); *Hardy v. United States*, 127 Fed. Cl. 1, 10–17 (2016). The Court of Federal Claims treated one of the MG&AR form deeds, signed by W.W. Armstrong in 1890 ("the Armstrong deed"), as representative of all of the MG&AR form deeds at issue in this appeal. *Hardy*, 127 Fed. Cl. at 10–13. Noting that "W.B. Lee did not use a standard form deed like most of the other grantors in this case," the trial court analyzed the Lee deed separately. *Hardy*, 129 Fed. Cl. at 517–18, 518 n.5; *see also Hardy*, 127 Fed. Cl. at 10–14.

The trial court also held that under this court's precedent in *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010), Hardy's takings claims accrued when the August 2013 NITU was issued. *Hardy*, 127 Fed. Cl. at 21. Accordingly, the trial court granted in relevant part Hardy's motion for summary judgment.

After the STB corrected the NITU in November 2016, the Government moved for partial reconsideration of the trial court's summary judgment decision. The Government argued that because the NITU correction merely remedied

a "ministerial error," there was no "unequivocal act that demonstrates the necessary intent to abandon the rail line" so as to effect a taking of Hardy's land between the original and corrected descriptions of milepost E-65.80's location. *Hardy v. United States*, 131 Fed. Cl. 534, 537 (2017). The Court of Federal Claims interpreted *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), and its progeny to promulgate a bright-line rule that "issuance of a NITU effects a taking." *Hardy*, 131 Fed. Cl. at 537–38 (citation omitted). Applying this rule, the trial court concluded that "a NITU renders moot the issue of the [R]ailroad's intent regarding abandonment," *id.* at 538 n.6, and that "[p]ost-NITU events may affect the duration of, and compensation for, the taking, but they do not foreclose the NITU from effecting the taking in the first instance," *id.* at 538 (citation omitted). The trial court further concluded that the November 2016 correction to the NITU did not apply retroactively. *Id.* at 539. Accordingly, the trial court held that plaintiffs owning land encompassed by the original NITU's description but east of the actual location of milepost E-65.80 "suffered a temporary taking from August 19, 2013 (the issue date of the original NITU) to November 18, 2016 (the date the NITU was modified)." *Id.* at 539–40. Following a trial on damages, the Court of Federal Claims awarded Hardy $2,364,767.85 in collective damages and interest through February 19, 2019.

The Government appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

The Government presents two challenges on appeal. First, the Government asserts that the Court of Federal Claims erred in holding that Hardy has a compensable property interest, because in the Government's view, the trial court erred in concluding that the MG&AR form deeds, the Lee deed, and the County Road 213 deeds conveyed easements rather than fee simple estates. Second,

the Government argues that contrary to the trial court's holding, the NITU's erroneous description did not effect takings of parcels east of milepost E-65.80 because the Railroad never intended to abandon the section of the rail line east of milepost E-65.80. We address each argument in turn.

We review the Court of Federal Claims' legal conclusions de novo and review its fact findings for clear error. *Holland v. United States*, 621 F.3d 1366, 1374 (Fed. Cir. 2010) (citing *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001)). "Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Alves v. United States*, 133 F.3d 1454, 1456 (Fed. Cir. 1998)). We review de novo the existence of a compensable property interest. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013) (citing *Tex. State Bank v. United States*, 423 F.3d 1370, 1378 (Fed. Cir. 2005)).

I

We first consider the Government's arguments that Hardy has no compensable property interest. Resolution of these arguments turns on whether the MG&AR form deeds, the Lee deed, and the County Road 213 deeds conveyed fee simple estates or easements. Because we conclude that the MG&AR form deeds and the Lee deed granted easements to the Railroad, and that the County Road 213 deeds granted easements to the State Highway Department of Georgia, we hold that Hardy has a compensable property interest.

A

"[W]e must apply the law of the state where the property interest arises," here, Georgia law, to determine whether Hardy has a compensable property interest. *Chi. Coating Co. v. United States*, 892 F.3d 1164, 1170 (Fed. Cir.

2018) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Under Georgia law, "the crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention many elements enter into the question."   *Jackson v. Rogers*, 54 S.E.2d 132, 136 (Ga. 1949).  We must examine "the whole deed," and consider "[t]he recitals in the deed, the contract, the subject-matter, the object, purpose, and the nature of restrictions or limitations, and the attendant facts and circumstances of the parties at the time of making the deed." *Johnson v. Valdosta, Moultrie & W. R.R.*, 150 S.E. 845, 847 (Ga. 1929) (citations omitted).

Certain attributes of a deed may support conveyance of an easement, such as nominal consideration, description of the conveyance as a "right of way," reservation of rights to the grantor or grant of rights to the grantee, and reversionary interests to the grantor. *See Askew v. Spence*, 79 S.E.2d 531, 532 (Ga. 1954); *Duggan v. Dennard*, 156 S.E. 315, 316 (Ga. 1930); *Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 109 (Ga. App. 2000).  On the other hand, the presence of a warranty clause or a habendum clause "contain[ing] the words 'forever in fee simple'" may support conveyance of a fee simple interest.  *Rogers*, 54 S.E.2d at 136–37; *see also Valdosta*, 150 S.E. at 847.  But "each case depends on its own particular facts and circumstances."  *Barber v. S. Ry. Co.*, 274 S.E.2d 336, 337 (Ga. 1981) (citation omitted).

Indeed, "[t]he fact that [the] right acquired is designated as a fee, or that the deed contains a covenant of warranty, is not necessarily controlling."   *Atlanta, Birmingham & Atl. Ry. Co. v. Coffee Cty.*, 110 S.E. 214, 216 (Ga. 1921) (citation omitted).  In *Coffee County*, the Georgia Supreme Court held that a deed conveying "[o]ne hundred feet in width of right of way, that is to say fifty (50) feet on each side of the center of the road bed of the" railroad, conveyed only an easement, despite the deed's covenant of

general warranty and a habendum clause granting the railroad "the said bargained and described right of way unto the said party of the second part, its successors and assigns, forever in fee simple." *Id.* at 215. Considering the deed as a whole, the court concluded that "[t]he words 'fee simple' are descriptive of the extent of duration of the enjoyment of the easement." *Id.* (citations omitted).

Similarly, in *Duggan*, the Georgia Supreme Court held that a deed conveying "the right of way upon which a railroad has been located" for consideration of one dollar conveyed an easement, even though the deed contained a habendum clause akin to "the terms used in a warranty deed conveying fee-simple title, with the warranty omitted." 156 S.E. at 315, 317. The habendum clause granted the "said described property" to the railroad, "its successors or assigns, so that neither the said [grantor], nor heirs, nor any other person or persons claiming under him shall at any time have, claim, demand any right, title, or interest in or to the aforesaid described property, or its appurtenances." *Id.* at 317. It was qualified, however, by a statement that the property was "conveyed to be used by the [railroad] in such manner as it may deem proper in the construction and equipment of its railroad . . . and for all other purposes." *Id.* In interpreting the deed, the court first noted that the "grantor[] conveyed a considerable tract of land for the mere nominal consideration of $1," and that "the land is described as a 'right of way,' and not otherwise." *Id.* at 316. Turning to the habendum clause and its qualification, the court reasoned that the language "for all other purposes," in context, "does not extend further than to include all other purposes 'proper in the construction and equipment' of the named railroad." *Id.* at 317. Considering the deed as a whole and construing the habendum clause alongside "the statement that [the grantor] was conveying only a right of way and the selection of the words 'to be used' in the qualification to the habendum," the court

reasoned that "it was not the intention of the grantor that his lot of land should be aliened in fee." *Id.*

A deed's description of the subject property as a "right of way" is similarly not dispositive. *See Valdosta*, 150 S.E. at 847. In *Valdosta*, for four hundred dollars, the deed conveyed "all that tract or parcel of land situate . . . as follows: A strip of land sixty feet wide for a railroad right of way" of specified acreage. *Id.* at 845. The deed contained a warranty clause and a habendum clause granting "the said real estate . . . forever in fee simple." *Id.* at 845–46. Examining the deed as a whole, the Georgia Supreme Court concluded that the deed conveyed a fee simple estate. *Id.* at 847. The court began by noting that the consideration for the conveyance was "the substantial sum of $400," which it concluded distinguished the deed "from conveyances to railroad companies of right of way based upon nominal considerations and of benefits to be derived by the grantors from the construction and operations of railroads over or through their lands." *Id.* In context, the court concluded that the words "for a railroad right of way" were merely "intended to describe the land granted" by "the subject-matter of the conveyance"—"all that tract or parcel of land situate, lying, and being in the County of Colquitt and State of Georgia." *Id.* The habendum clause's grant of "the said real estate . . . forever in fee simple," combined with the warranty clause's recitation of "about two acres, more or less, of said land conveyed . . . forever in fee simple," were "potent, when considered in connection with the other terms of this deed, in inducing [the court] to hold that this deed conveyed the title to this strip of land to the grantee." *Id.*

B

Against this background, we conclude that read in their entirety, the MG&AR form deeds and the Lee deed reflect the parties' apparent intent to convey easements in the form of railroad rights of way.

The trial court treated the Armstrong deed as illustrative of all of the MG&AR form deeds at issue in this appeal, and the parties do not challenge this conclusion. *Hardy*, 127 Fed. Cl. at 10–13; Appellant's Br. 21 ("Some of the form deeds contain minor modifications to the form language, but all contain the operative language discussed below."); Appellees' Br. 24. Accordingly, we also treat the Armstrong deed as illustrative of all of the MG&AR form deeds. Like the trial court, we turn to the Lee deed after considering the Armstrong deed.

The Armstrong deed consistently refers to the property conveyed as a "right of way." The face of the Armstrong deed identifies the "conveyance in brief" as a "Right of Way" of a specified width, defined with respect to the railroad track. J.A. 563. Additionally, the Armstrong deed is titled "Right of Way Deed" and appears to have been recorded with the county clerk as such. J.A. 564–65. The subject-matter of the Armstrong deed's conveyance also identifies the interest conveyed as a "right of way" and defines the location of the interest conveyed in terms of the location of the railroad. J.A. 564, 566. The Armstrong deed conveys:

> A strip of land situated in the 477 [G.M.?] District of Newton County, fifty feet wide, the same being twenty five feet on each side of the centre line of said Railroad, *for a right of way of said Railroad, or for any other use, in the discretion of said Company,* and more particularly described as follows:
>
> Along a recent survey made by Said Rail Way Co. through my lands in said State & County.

J.A. 566 (brackets in original) (emphasis added). Armstrong received nominal consideration of $7.75 for the interest conveyed. *Id.* The Armstrong deed contains a warranty clause and a habendum clause that recites: "To Have and to Hold the said described land, with its members and appurtenances unto the said Middle Georgia &

Atlantic Railway Company, its successors and assigns, forever." *Id.*

Considered in its entirety, the Armstrong deed reflects the parties' intent to create an easement in the form of a railroad right of way. Like the *Duggan* and *Coffee County* deeds, and unlike the *Valdosta* deed, the Armstrong deed recites only nominal consideration. It is true, as the Government points out, that like the *Valdosta* deed, the Armstrong deed describes the conveyance as "a strip of land." *Valdosta*, 150 S.E. at 845; J.A. 566. But whereas the *Valdosta* deed conveys "all that tract or parcel of land situate," further described as "[a] strip of land . . . for a railroad right of way," 150 S.E. at 845, the Armstrong deed merely conveys "[a] strip of land . . . for a right of way of said Railroad," further described by reference to "a recent survey" made by the Railroad, J.A. 566. The subject-matter of the Armstrong deed's conveyance is "[a] strip of land . . . *for a right of way of said Railroad*, or for any other use, in the discretion of said Company." J.A. 566 (emphasis added). The title of the Armstrong deed further reinforces the conclusion that the deed conveys a right of way, rather than land. Additionally, unlike the *Valdosta* deed, the Armstrong deed does not fix the acreage subject to the conveyance, instead describing the location and quantity of the subject land by reference to the railroad track. *Id.*; *see Latham*, 538 S.E.2d at 109 ("[T]he conveyance of Mims did not intend to convey anything more to the railroad than an easement for the right-of-way, because the initial conveyance specified only a quantity of land affected, 100 feet on either side of the tracks, and the direction.").

The existence of a warranty clause does not compel the conclusion that the Armstrong deed conveyed a fee simple estate. *See Coffee Cty.*, 110 S.E. at 215–16. Indeed, neither the habendum clause nor the warranty clause of the Armstrong deed recites conveyance in "fee simple." The word "forever" in these clauses merely describes the duration of the conveyance. *See id.* Considering the Armstrong deed

as a whole, we conclude that "it was not the intention of the grantor that his lot of land should be aliened in fee." *Duggan*, 156 S.E. at 317.

We also conclude that the Lee deed, when considered in its entirety, similarly conveys an easement. Like the Armstrong form deed, the face of the Lee deed describes the conveyance as a "Right of Way." J.A. 744. Furthermore, the county clerk's office seems to have recorded the Lee deed as a "Right of Way" deed. *Id.*; J.A. 749–50. Turning to the body of the Lee deed, the conveyance is expressly defined as "what is necessary for Railroad purposes for said Railroad as a right of way." J.A. 751. The further description of the Lee deed's conveyance also identifies the conveyance as "[t]his right of way":

> This Indenture Witnesseth: That the under-signed Wm.B. Lee has bargained, sold, and conveyed to the Middle Georgia & Atlantic Railway Company, a corporation, of said State, the following property: A strip of land situate in the 462 G.M. District of Newton County, *the width to be what is necessary for Railroad purposes for said Railroad as a right of way*, more particularly described as follows:
>
> > *This right of way* is in the City of Covington, and in the south eastern portion of the city limits, passing through the Eastern portion of the lot bought by said W. B. Lee from Joe L. Sibley.

*Id.* (emphases added). Though Lee received substantial consideration of $150 for the conveyance, *id.*, the deed indicates that the amount was determined by "a committee of arbitors selected . . . to assess the damage sustained by [Lee] on account of the *right of way* of the Middle Ga & Atlantic R.R. passing *through his property*," J.A. 747 (emphases added). The Lee deed's warranty and habendum clauses are identical to those of the Armstrong deed, save

for the name of the grantor.  *Compare* J.A. 751, *with* J.A. 566.  Examining the Lee deed as a whole, we conclude that the parties intended the deed to convey an easement in the form of a railroad right of way, not a fee simple estate.

C

We also conclude that the County Road 213 deeds, considered in their entirety, reflect the parties' intent to convey easements.

Like the MG&AR form deeds, each of the County Road 213 deeds is titled "Right of Way Deed" and repeatedly refers to the conveyance as a "right of way."  *E.g.*, J.A. 1167.  The County Road 213 deeds convey "so much land in Land Lot No. . . . as to make a right of way for said road," expressly defining the land subject to the conveyance as that necessary "to make a right of way."  *E.g.*, *id.*  The County Road 213 deeds reference survey measurements more particularly identifying the land subject to conveyance relative to the center line of the highway.  *E.g.*, *id.* (conveying "so much land . . . as to make a right of way for said road *as* surveyed and measured from the center line of the highway location as follows: [survey measurements]").  The deeds' further description also refers to the conveyance as a "right of way."  *E.g.*, *id.* ("Said right of way is more particularly described according to a plat of the right of way . . . .").  In exchange for their conveyances, the landowners received nominal consideration of one dollar, in addition to the benefit to them from the "State Aid Road" to be constructed through their parcels.  *E.g.*, *id.*

In a section titled "Conditions and Reservations," the County Road 213 deeds "further grant the right to all necessary drainage in the construction and maintenance of said road constructed over said right of way" to the State Highway Department of Georgia.  *E.g.*, *id.*  The grant of drainage rights is inconsistent with a fee simple interest. *See Latham*, 538 S.E.2d at 109 ("[T]he express right to the

railroad to cut timber and clear undergrowth from the right of way . . . is inconsistent with the conveyance of title, where the owner has full dominion and control, but not in an easement." (citing *Askew*, 79 S.E.2d at 531)). Additionally, some of the County Road 213 deeds contain a condition of reverter: "In case the *right of way* is abandoned as a highway location, same shall revert to the property from which it is taken." J.A. 1154–57 (emphasis added).

The County Road 213 deeds contain a warranty clause and a habendum clause reciting: "To have and to hold *the said conveyed premises* in fee simple." *E.g.*, J.A. 1167 (emphasis added). Recitation of "in fee simple" in the habendum clause modifies, rather than supersedes, "the said conveyed premises." As in *Coffee County*, "[t]he words 'fee simple' are descriptive of the extent of duration of the enjoyment of the easement." 110 S.E. at 215 (collecting cases); *see also, e.g.*, *Gaston v. Gainesville & Dahlonega Elec. Ry. Co.*, 48 S.E. 188, 188–89 (Ga. 1904) (construing conveyance as an easement where, for consideration of $5, the deed conveyed "all the land necessary . . . to construct said railroad," rights to timber and minerals were reserved, the deed contained no reversionary interest or warranty clause, and the habendum clause recited "for railroad purposes, forever in fee simple").

The Government argues that the County Road 213 deeds are "substantially similar" to those held to convey fee for a roadway in *Department of Transportation v. Knight*, 232 S.E.2d 72 (Ga. 1977). Appellant's Br. 34–35. We find *Knight* distinguishable. The land at issue in *Knight* "was acquired . . . pursuant to the Limited Access Highway Act," which "required condemning bodies to acquire real property rights in fee simples." 232 S.E.2d at 73–74. *Knight*'s conclusion that the "Department clearly intended to purchase a fee simple estate . . . follow[ed] from examination of the laws governing the acquisition." *Id.* at 73. By contrast, the Georgia statute pursuant to which County Road 213 was built recites no requirement that real

property rights for such state aid roads be acquired in fee simple. *See Hardy*, 127 Fed. Cl. at 16 (quoting GA. CODE ANN. § 95-1721 (1935)).

That the County Road 213 "Right of Way Deed[s]" repeatedly refer to the conveyance as a "right of way," recite nominal consideration, grant drainage rights to the Georgia State Highway Department, and that some of the deeds recite a reversionary interest, supports conveyance of an easement. Accordingly, we conclude that, considered as a whole, the County Road 213 deeds conveyed easements to the State Highway Department of Georgia.

Because the MG&AR form deeds, the Lee deed, and the County Road 213 deeds convey only easements, we affirm the trial court's holding that Hardy has a compensable property interest.

II

Finally, we turn to the Government's argument that the August 2013 NITU did not effect takings of parcels east of milepost E-65.80 because the Railroad never intended to abandon the section of the rail line east of milepost E-65.80. Because neither the trial court's opinion nor the parties' briefing before this court sufficiently focused on the relevant inquiry as recently promulgated by this court in *Caquelin v. United States*, 959 F.3d 1360 (Fed. Cir. 2020), we vacate and remand for the parties to address this issue before the trial court in the first instance.

A

In a rails-to-trails case, a taking occurs when a "NITU is issued and state law reversionary interests that would otherwise take effect pursuant to normal abandonment proceedings are forestalled." *Caldwell*, 391 F.3d at 1236. Our recent decision in *Caquelin* clarifies the legal standard for "the timing of a NITU-based taking" under *Caldwell* and its progeny. 959 F.3d at 1370. In *Caquelin*, we explained that "[t]he challenged government action is the

legally mandated maintenance of the [railroad's] easement through denying abandonment authority to the railroad" through issuance of a NITU. *Id.* at 1371. So long as the railroad's easement continues, it prevents the vesting of state law reversionary interests. Because the railroad's easement would remain in place absent abandonment by the railroad, a NITU alters the easement's continuation only if the railroad would have abandoned the rail line during the NITU period had the NITU not been issued. *See id.* In other words, "a NITU does not effect a taking if, even in the absence of a NITU, the railroad would not have abandoned its line (a necessary prerequisite for termination of the easement under state law) during the period of the NITU." *Id.* at 1363. "[I]n such a case, the NITU takes nothing from the landowner that the landowner would have had in the absence of the NITU." *Id.*

*Caquelin* acknowledges that "other language in *Caldwell*" and its progeny "uses a shorter formulation referring simply to the NITU date as the date of taking." *Id.* at 1372 (first citing *Caldwell*, 391 F.3d at 1235; then citing *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); and then citing *Ladd*, 630 F.3d at 1020). But *Caquelin* concludes that the shorter formulation "is better read so as not to run counter both to the fuller formulation and to basic causation principles" underlying takings claims. *Id.* Instead, the shorter formulation represents "a shorthand that applies where no party has pointed to any legally material difference between the NITU date of issuance (or expiration) and a date of abandonment in the but-for world in which there was no NITU." *Id.*

B

Here, the Government asserts that testimony and evidence demonstrate that, even in the absence of the NITU, "the [R]ailroad never intended to abandon the section of rail line to the east of milepost E65.80." Appellant's Br. 47. At oral argument, Hardy disputed the Government's

contention, asserting that the Railroad would have abandoned the portion of its rail line east of milepost E-65.80 absent the NITU because the Railroad's request to abandon contained the same parenthetical description of affected land as the August 2013 NITU. Oral Arg. at 19:47–21:17, 21:32–22:22, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=19-1793.mp3.

Because the briefing and argument before this court did not sufficiently focus on whether or when the Railroad would have abandoned its easements for land east of milepost E-65.80 absent the NITU, we decline to address this issue on the merits in the first instance. Accordingly, we vacate the Court of Federal Claims' decision that issuance of the NITU effected a physical taking of land east of milepost E-65.80 and remand for further proceedings on the questions of whether and when the Railroad would have abandoned the portion of its rail line east of milepost E-65.80 absent the August 2013 NITU.

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the Court of Federal Claims' decisions that the MG&AR form deeds, the Lee deed, and the County Road 213 deeds conveyed only easements. We vacate the trial court's decision that issuance of the NITU effected temporary physical takings of parcels east of milepost E-65.80 and remand for further proceedings on this issue.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

No costs.