NOT DESIGNATED FOR PUBLICATION

No. 123,877

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRACY PRESNELL,
*Appellant*,

V.

MICHELE CULLEN,
President of Central Kansas Conservancy,
*Appellee*.

MEMORANDUM OPINION

Appeal from McPherson District Court; MARILYN M. WILDER, judge. Opinion filed May 6, 2022.
Affirmed.

*Tracy Presnell*, appellant pro se.

*Ann M. Elliott*, of Wise & Reber, L.C., of McPherson, for appellee.

Before MALONE, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: This is a small claims appeal involving a stretch of railroad corridor that runs through Tracy Presnell's property in McPherson County. The Central Kansas Conservancy (Conservancy) acquired the railroad easement for interim use to develop a recreational trail open to the public under the National Trails System Act (Trails Act), 16 U.S.C. § 1247(d) (2018). Presnell argues Michele Cullen, as president of the Conservancy, did not have the right to cut down vegetation located within the trail easement on his property to develop the recreational trail and further claims the district court erred by not awarding him damages for the value of the destroyed vegetation.

1

Presnell also argues the district court erred in awarding legal fees to Cullen as the president of the Conservancy. After review, we find no error by the district court and affirm.

FACTS

The facts are largely undisputed. Presnell owns property in McPherson County encumbered by a railroad easement.

In 1997, Union Pacific Railroad Company conveyed its railroad easement to the Conservancy by donative quitclaim deed to develop a public recreational trail. The Conservancy submitted a project plan to the McPherson County Commission, explaining its initiative to develop the Meadowlark Trail, a 12.5-mile recreational trail on the railroad corridor between McPherson and Lindsborg. The Conservancy was charged with developing and maintaining the recreational trail to preserve the railroad corridor for potential railroad use in the future in accordance with the Trails Act.

On August 4, 2018, Cullen, along with other Conservancy members and volunteers, entered the railroad corridor, including the easement on Presnell's property, and cut down trees and other vegetation to develop the recreational trail. In January 2019, Presnell filed a small claims action against Cullen, individually, for "cutting down trees on [his] property, legal fees, and emotional distress." The small claims court found for Cullen, and Presnell timely appealed to the district court.

The matter proceeded to trial in August 2020, and the district court denied Presnell's request for relief. The district court explained the Conservancy's easement covered the entire railroad corridor, an area roughly 66 feet wide, and found the trees removed from Presnell's property were located within the railroad corridor to develop and maintain the recreational trail. The district court ultimately concluded the Conservancy

had the right to remove any and all vegetation it wanted within the easement, Presnell was not entitled to damages for a taking of property, and Cullen was entitled to her attorney fees. Additional facts are set forth as necessary herein.

ANALYSIS

I.     PRESNELL'S REVERSIONARY PROPERTY INTEREST WITHIN THE RAILBANKED RAILROAD RIGHT-OF-WAY DOES NOT PROVIDE HIM WITH RELIEF FOR HIS CLAIMS.

For clarity and brevity, we have combined many of Presnell's issues into one, addressing the claim as one arguing the district court erred in finding he had no interest in the vegetation growing on his property located within the Conservancy's easement even though he was the fee simple landowner. Presnell admits the railroad corridor and easement was about 66 feet wide but argues the Conservancy merely had a nonpossessory interest in the property, which was limited to a specific use within the right-of-way corridor. He asserts the easement holder—here, the Conservancy—owes a duty to the servient estate—Presnell's property—to protect and preserve the trees and other vegetation in the easement area when it could reasonably do so.

The Conservancy asserts railroads are regulated by federal law and argues railroad easements "are far closer to ownership in fee than to garden variety easements." The Conservancy, as the Meadowlark Trail sponsor, contends it had the right to exclusive use of the entire railroad corridor.

*Standard of Review*

Here, the relevant facts are not in dispute; therefore, this issue presents pure questions of law subject to unlimited review. To the extent the parties' arguments also

3

involve statutory interpretation, our review is de novo. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

*Applicable Legal Principles and Statutory Background*

Congress enacted the original Trails Act in 1976. In recognition of the Trails Act, the Kansas Legislature, in 1995, adopted the Kansas Recreational Trails Act (KRTA), K.S.A. 58-3211 et seq., which relates to property transferred or conveyed for interim use and development of a rail line as a recreational trail. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 287-88, 255 P.3d 1186 (2011). Under K.S.A. 58-3211(b), the KRTA defined a recreational trail as "a trail created pursuant to subsection (d) of 16 U.S.C. 1247 (1983)." Further, under K.S.A. 66-525(a)(1), a railroad right-of-way will not be considered abandoned unless an appropriate federal or state authority issues an abandonment order. Another panel of our court, in interpreting K.S.A. 66-525, noted Kansas law on railroad abandonment was not inconsistent with federal law, which requires the Surface Transportation Board (STB) to issue an order of abandonment before a railroad right-of-way can be abandoned. *Bitner v. Watco Companies*, 43 Kan. App. 2d 495, 498, 226 P.3d 563 (2010).

*Discussion*

Presnell's arguments are improperly briefed and/or unpersuasive on the merits.

*Abandonment*

Presnell seems to incidentally raise an argument the railroad abandoned its right-of-way and the property interest should return to him as owner of the servient estate. An argument incidentally raised and not adequately briefed is considered waived and abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Even if

4

Presnell adequately briefed the abandonment issue, the record does not contain an order issued by an appropriate federal or state authority showing the railroad abandoned its right-of-way. In 1997, Union Pacific Railroad, by donative quitclaim deed, transferred and conveyed the railroad easement traversing Presnell's property to the Conservancy for interim use to develop and maintain a recreational trail. Under 16 U.S.C. § 1247(d), the Conservancy's interim use of the right-of-way must not be treated as an abandonment of the use of such right-of-way for railroad purposes.

*Extent and scope of easement*

Presnell acknowledges the Conservancy received a donative quitclaim deed for the easement approximately 66 feet in width. But Presnell argues the Conservancy needed only an area of about 10 to 14 feet wide to develop the Meadowlark Trail and was thus limited to using and developing that narrow area. Presnell asserts he owns the land and vegetation outside of the 10 to 14 feet required for the trail, and the Conservancy had no right to unnecessarily cut vegetation on his property.

Presnell suggests the district court incorrectly relied on *Central Kansas Conservancy v. Sides*, 56 Kan. App. 2d 1099, 443 P.3d 337 (2019)—a case related to the same public rail-trail corridor—to determine the Conservancy controlled the entire width of the easement. Presnell explains the district court erred in relying on *Sides* because the issues addressed "had nothing to do with trees and vegetation growing out of the real estate underlying the easement." In *Sides*, the panel stated in relevant part:

> "In short, we conclude that the Conservancy owns the trail use easement and has the right to develop the rail corridor into a trail. . . .
> "On April 16, 1997, in accordance with the Trails Act, Union Pacific [Railroad] and the Conservancy entered a line donation contract, where Union Pacific gave the Conservancy a 'Donative Quitclaim Deed' to its easement rights over 12.6 miles of railroad corridor in McPherson County. As a result, absent future railbanking, the

5

Conservancy obtained the exclusive right to develop the railroad corridor for recreational trail use." 56 Kan. App. 2d at 1101.

Generally, a railroad acquires only an easement for a right-of way on a strip of land, which reverts to the original landowner upon abandonment by the railroad. *Jenkins v. Chicago Pacific Corp.*, 306 Kan. 1305, 1309, 403 P.3d 1213 (2017). It appears undisputed the railroad acquired only an easement for a right-of-way, but the Conservancy argues a railroad right-of-way is essentially the same as fee ownership of the land. The record does not contain the deed conveying the land to Union Pacific Railroad Company to affirmatively determine whether the railroad owned the land in fee simple or owned an easement for railroad purposes. The record does provide the donative quitclaim deed from the railroad to the Conservancy. The quitclaim deed stated:

"This quitclaim deed is made on an 'as is' basis without any warranties or representations of any kind or nature whatsoever, express or implied, concerning the conditions of the property, and grantee hereby specifically waives any implied warranties provided for by Kansas law (if any) including any and all warranties regarding fitness for any particular use or purpose whatsoever."

Prior litigation over the same railroad corridor suggests the railroad owned only an easement. Another panel of our court, as well as the United States District Court for the District of Kansas, have recognized the easement at issue is just that, an easement. See *Barclay v. United States*, 351 F. Supp. 2d 1169, 1173-74 (D. Kan. 2004); *Sides*, 56 Kan. App. 2d at 1101. The Conservancy, however, goes too far in asserting the easement provides exclusive rights to the property in fee simple. While *Sides* involved an issue regarding adverse possession over the interim trail use easement, rather than improper removal of vegetation, the panel explained: "[T]he Conservancy's trail use easement is an easement for public use." 56 Kan. App. 2d at 1119.

6

The Conservancy had a right to reasonably use the railroad corridor to develop and maintain the recreational trail whether it had fee simple possession or an easement. The district court appropriately determined the Conservancy was entitled to remove vegetation on its easement for purposes of developing and maintaining the Meadowlark Trail. The district court went too far, however, in determining the Conservancy had a right to remove any vegetation on the right-of-way for any purpose, even to retaliate against Presnell. But no evidence suggested the Conservancy removed the vegetation at issue in retaliation. The Conservancy presented evidence the vegetation was removed within the easement, at the discretion of a member or volunteer, to build an adequate trail and maneuver the equipment necessary for trail development. Evidence showed the Conservancy tries to preserve vegetation around the trail for shade and wind breaks. The district court correctly determined the Conservancy reasonably removed vegetation within the trail easement.

*Trespass*

Presnell contends Cullen directed Conservancy members and volunteers to cut trees and vegetation outside the area needed for trail development and, therefore, trespassed onto his property. Presnell relies on the Restatement (Third) of Property regarding servitudes as well as caselaw suggesting the owner of the servient estate can bring an action for trespass if improper and unnecessary damages occur on the property without full compensation. See *Mall v. C. & W. Rural Electric Cooperative Ass'n*, 168 Kan. 518, 521-22, 213 P.2d 993 (1950) ("Shade trees and shrubs on the right of way of a township road to which the fee belongs to the abutting owner, are a part of the fee and cannot be taken for private purposes or for purposes inconsistent with highway purposes without full compensation to the fee owner. [Citations omitted.]"); *Miessler v. Solida & Sons Tree Service, Inc.*, No. 94,352, 2006 WL 2465508, at *1-2 (Kan. App. 2006) (unpublished opinion) (in a trespass action, the owner of the servient estate bears the burden to establish work performed on the easement unnecessarily injured the property or

7

was improper); Restatement (Third) of Property (Servitudes) § 8.3(b) (2000) ("Excessive use or unauthorized use of an easement is generally a trespass to the servient estate for which damages and injunctive relief are normally granted.").

The Conservancy points out the KRTA imposes duties on trail sponsors to develop and maintain the recreational trail in a reasonable, prudent, and safe manner. See K.S.A. 58-3212(a)(5) ("develop and maintain the recreational trail in a condition that does not create a fire hazard."); K.S.A. 58-3212(a)(11)(B) ("maintain all bridges, culverts, roadways intersections and crossings on the trail, essential to the reasonable and prudent operation of the trail . . . .").

Interestingly, Presnell does not contend Cullen ever overstepped the boundary of the easement. The Conservancy has not excessively used the trail easement or used the easement in an unauthorized manner. As discussed above, the Conservancy did not act unreasonably or unnecessarily to injure or damage Presnell's property. The Conservancy had a right to reasonably use the entire 66-foot easement it acquired to develop the Meadowlark Trail. Presnell's trespass claim fails.

II.     PRESNELL IS NOT ENTITLED TO DAMAGES FOR VEGETATION REMOVED AND THE DISTRICT COURT CORRECTLY AWARDED CULLEN HER ATTORNEY FEES.

Presnell asserts the district court erred in not awarding him compensation for the value of the vegetation removed from his property as the owner of the servient estate of the easement. He also argues the district court erroneously determined Cullen, as president of the Conservancy, was permitted to cut down vegetation on the easement and, therefore, erred in awarding Cullen attorney fees. Presnell asks us to reverse the district court's award of attorney fees. His arguments on these points raise questions requiring interpretation of federal and state statutes over which we have unlimited review. *Nauheim*, 309 Kan. at 149. However, "where there is a binding federal court decision

8

interpreting a federal statute, we are obligated to follow that interpretation." *In re Marriage of Williams*, 307 Kan. 960, 968, 417 P.3d 1033 (2018).

*Taking and damages*

The Fifth Amendment to the United States Constitution states, in relevant part: "[P]rivate property [shall not] be taken for public use, without just compensation." While the United States Supreme Court noted only some rails-to-trails conversions amount to a taking, the Trails Act authorizes just compensation if there was a taking. *Preseault v. Interstate Commerce Commission*, 494 U.S. 1, 13, 16, 110 S. Ct. 914, 108 L. Ed. 2d 1 (1990) ("Some rights-of-way are held in fee simple."). Again, it appears uncontested the rails-to-trails corridor at issue here was an easement and was not owned by the railroad in fee simple. See *Barclay*, 351 F. Supp. 2d at 1170 (plaintiffs owned property subject to railroad easement for railroad purposes); *Sides*, 56 Kan. App. 2d at 1100 (Conservancy owns trail use easement to develop Meadowlark public trail).

Under the Trails Act, the STB can preserve a railroad right-of-way that is no longer in service for future railroad use, allowing interim use of the right-of-way for a recreational trail. This process is called "railbanking." *Board of Miami County Comm'rs,* 292 Kan. at 288. Once the STB issues a notice of interim trail use (NITU), the six-year statute of limitations begins running for reversionary landowners to bring an inverse condemnation action against the United States. Issuing the NITU constitutes a government action that effectively prevents abandonment of the railbanked corridor and precludes the vesting of the reversionary landowner's property rights in the right-of-way. *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004), *holding modified by Hardy v. United States*, 965 F.3d 1338 (Fed. Cir. 2020). "After a final trail use agreement is reached [between the railroad and the trail sponsor], the NITU remains in effect indefinitely and 'abandonment cannot be accomplished under the . . . NITU until trail use terminates (without restoration of rail service).' [Citation omitted.]" *Caldwell*, 391 F.3d at

9

1234. If a trail use agreement is reached—as was done here—the taking becomes permanent under the NITU unless the trail use agreement is abandoned, and rail service is not restored.

The *Caldwell* court relied on *United States v. Dow*, 357 U.S. 17, 23-24, 78 S. Ct. 1039, 2 L. Ed. 2d 1109 (1958), which "rejected, as 'bizarre,' the argument that there were 'two different "takings" of the same property, with some incidents of the taking determined as of one date and some as of the other.'" *Caldwell*, 391 F.3d at 1235. In fact, the *Dow* Court explained a federal taking for a particular use—there, a pipeline right-of-way—constitutes a single taking. 357 U.S. at 23-25. Applying this reasoning only one taking occurred when the easement was assigned to the Conservancy, and Presnell suffered no loss upon which the district court could award him damages.

*Attorney fees*

K.S.A. 2020 Supp. 61-2709(a) states, in relevant part:

> "An appeal may be taken from any judgment under the small claims procedure act. . . . If the appellee is successful on an appeal pursuant to this subsection, the court shall award to the appellee, as part of the costs, reasonable attorney fees incurred by the appellee on appeal."

Our Supreme Court explained the party who obtains an affirmative judgment in his or her favor at the end of a case is the successful, or prevailing, party, and "[t]he attorney fees provision in K.S.A. 61-2709(a) is mandatory." *Hodges v. Johnson*, 288 Kan. 56, 71, 199 P.3d 1251 (2009). Presnell does not argue whether the statute is mandatory or directory. Rather, he simply argues the district court erred in determining Cullen, on behalf of the Conservancy, was permitted to cut vegetation within the easement and, because the district court erred in finding Cullen was the prevailing party, it erred in

awarding attorney fees. Whether the statute is mandatory or directory makes no practical difference here as Presnell's claim fails, and the district court properly awarded Cullen her reasonable attorney fees in the amount of $6,812.50.

Affirmed.